THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* SALVATORE GATTI, Defendant.

Court of General Sessions of County of New York, April 23, 1938.

Thomas E. Dewey, District Attorney [Jacob J. Rosenblum, Assistant District Attorney, of counsel], for the plaintiff.

Samuel S. Leibowitz [Vincent K. Impelliterri of counsel], for the defendant.

FRESCHI, J. The defendant, who is under indictment for the commission of the crime of murder in the first degree, asks for " an order of inspection, directing the district attorney, (a) to permit a fingerprint expert to be retained by the defendant to examine and photograph the pistol bearing the alleged fingerprints of this defendant; and (b) to furnish a photostatic copy of the fingerprints of the defendant taken at the time of his arrest in the instant case." The basis for the assumption by the defendant's counsel, as set out in his moving papers, that the pistol in question had any impressions upon it, is that he read several newspaper articles which, in substance, state that fingerprint impressions of the defendant were found on the pistol of the deceased police officer; and that, therefore, it is reasonable also to assume that the said newspaper articles are based on statements issued to the press either by the district attorney or by one of his assistants or by the police. The press notices are not attached to the motion papers; nor is there any proof that, if they exist, either the district attorney or the police is responsible for them.

This motion might properly be denied at this point; but since counsel for the defense may press this matter further by way of a renewal of his application, it may be useful for our future guidance to review the authorities in various jurisdictions on applications of this sort.

As authority for this motion, the defendant cites People v. Terzani (149 Misc. 818) and People v. Wargo (Id. 461), both capital cases, in courts of concurrent jurisdiction. Although many such courts have allowed preliminary inspections in certain cases, there are no decisions by higher courts of appellate jurisdiction in this State clearly defining the power of trial courts in cases where an inspection is sought, save that in the Lemon case (People ex rel. Lemon v. Supreme Court, 245 N. Y. 24).

In the absence of specific statutory provision authorizing discovery and inspection in criminal causes, the difficulty presented

in all like cases is where to draw the line between the granting of such relief and its denial. If the courts were to grant such a forced disclosure of the prosecution's evidence, it is contended, with which I am in entire accord, it would subvert the whole system of criminal justice. (52 A. L. R. 207, 208; *State ex rel. Robertson* v. *Steele,* 117 Minn. 384; 135 N. W. 1128; *Rex* v. *Holland,* 4 Durnf. & E. 691; 100 Eng. Reprint, 1248.) Certainly, in the light of constitutional inhibition, a defendant cannot be compelled on application of the People to disclose evidence against himself (Russell on Crimes [7th Eng. ed.], p. 2145); and how far the courts will go to compel the district attorney to turn over the People's evidence to the accused is problematical. The general rule is that the accused has no right to the inspection or disclosure of evidence in the possession of the prosecution; and the courts ought not to lend their aid when satisfied that a demand for inspection is merely for exploratory purposes. (*United States* v. *Rosenfeld,* 57 F. [2d] 74; *Arnstein* v. *United States,* 296 Fed. 946; *Chandler* v. *State,* 60 Tex. Cr. Rep. 329; 131 S. W. 598. See, also, *Williams* v. *Duluth St. R. Co.,* 169 Wis. 261; 171 N. W. 939.) In *State* v. *Tippett* (317 Mo. 319; 296 S. W. 132, 135) the Missouri court goes so far as to say that where it was desired that the State's evidence as to a witness' statement remain undisclosed, that attitude partakes of the nature of a game, rather than judicial procedure.

In the Connecticut case of *Daly* v. *Dimock* (55 Conn. 579, 589; 12 A. 405, 406), where the court allowed an inspection of coroner's minutes, etc., the court said: " The State does not desire to procure convictions by any unfair concealment or surprise. It concerns itself quite as much in having the innocent acquitted as in having the guilty convicted. While it affords every reasonable facility for the prosecution of offenders, it is no less solicitous to give to every accused person a fair and reasonable opportunity to make his defense." And at page 591 the court adds: " there may be cases in which a wise public policy would seem to require that facts and circumstances ascertained by the State in the course of its investigation by the coroner, should not be made public."

Let it be remembered, however, that an inspection and disclosure of evidence in possession of the prosecution is quite apart from and does not include cases involving the right of the accused to an inspection of the minutes of the grand jury; nor does it include cases where a bill of particulars or a list of witnesses is demanded.

According to the ruling in *People ex rel. Lemon* v. *Supreme Court* (*supra*), documents in the possession of the district attorney, which are themselves inadmissible in evidence, are not subject to inspection by a defendant.

In the English case, *Rex* v. *Holland* (4 Durnf. & E. 691) it is also stated that a defendant is not entitled to any other intimation of the particular charge intended to be brought against him than what appears in the indictment or information, and that it was never conceived to be necessary or fit that he should receive intelligence of the particular evidence by which the charge is to be made out. (See, to the same effect, *Padgett* v. *State*, 64 Fla. 389; 59 So. 946.)

In *Wendling* v. *Commonwealth* (143 Ky. 587; 137 S. W. 205) it was held that where the prosecution proposed to introduce articles in its possession as incriminating evidence against the defendant, inspection and examination thereof was not allowed before trial. Of course, this does not deprive him of his right to have a full opportunity to examine such articles when offered as evidence at the trial. Similar views were expressed in *Tinker* v. *State* (95 Tex. Cr. Rep. 143; 253 S. W. 531).

In *United States* v. *Rich* (6 Alaska, 670), on an application filed for an order permitting defendant to inspect and make a photo of a certain piece of glass in custody of the prosecutor, on which it was claimed were fingerprints made by the accused, the court said: " I am unable to see any ground for refusing the application, except that there is no express statutory provision for granting it, and no precedent has been cited. The United States Attorney urged at the hearing that it was an attempt to compel the prosecution to disclose its case. Inasmuch as the intended use of the glass is admitted, I am unable to see any merit in the argument. If the defendant were to ask an order directing the prosecution to furnish him an outline of its entire case, the demand would be unreasonable. If this were done, the defendant would no doubt object at the trial if any testimony were offered of which he had no prior notice. The request for a photograph of the alleged fingerprints, in order that defendant may have them examined by experts of his own choosing seems entirely reasonable to me. The defendant is entitled to have every opportunity to prepare his defense. The whole purpose of a law trial, criminal or civil, is to ascertain the truth. No unfair handicap is imposed upon either party by allowing the other to have full knowledge of inanimate objects intended to be used in evidence. They are unchangeable except by destruction or wilful alteration. The law of English-speaking States nearly everywhere provides by statute or long precedent for the inspection of written documents * * *. The reason seems to me to be fully as strong in criminal cases. The government is given the right in Alaska to obtain by search warrant ' property used as means of committing a felony.' Why should the prosecution be allowed to withhold and conceal from a defendant all knowledge of a chattel which it claims carries convincing evidence of defendant's guilt? The evi-

dence cannot be altered by defendant's prior knowledge, nor can its force be minimized if the theory of the prosecution be correct. Inspection by the defendant before trial merely offers him the means of showing, if he can, that the prosecutor's theory is wrong. The logic of the issue is thus stated in Wigmore on Evidence, § 1862: ' So far as concerned chattels and premises in his possession or control, the adversary in common-law actions, like the true gamester that the law encouraged him to be, held safely all the trump cards of the situation, free from all legal liability of disclosure before trial; in this respect there was not recognized even the limited right of inspection which, after the days of Lord MANSFIELD, had been conceded for documentary evidence. But in chancery, under the same wholesome principle and practice by which bills of discovery were allowed for ascertaining the opponent's testimony and the documents in his possession, the inspection of chattels and premises in his possession or control was obtainable wherever fairness seemed to demand it.' "

·People v. Gerold (265 Ill. 448; 107 N. E. 165) held it to be error to refuse impounding books seized by the district attorney which were to be used in evidence, so as to allow access by the accused before trial to prepare his defense. Inspection of letters was allowed in Cloniger v. State (91 Tex. Cr. Rep. 143; 237 S. W. 288) and in Sprinkle v. State (137 Miss. 731; 102 So. 844) where counsel was allowed to examine a dying declaration.

An order for inspection by prisoners before trial permitting their surgeon to examine the stomach of the deceased under certain conditions was granted in Reg. v. Spry and Dore (3 Cox's Cr. Law Cas. 221), and in Rex v. Harrie (25 Eng. C. L. Rep. 344 [6 Carr. & Payne, 105]), where the prisoner was charged with sending a threatening letter, an inspection thereof was allowed. (See, also, Newton v. State, 21 Fla. 53, 71, where defendant applied for a commission to examine witnesses, and for an order that all articles in possession of the State intended to be used in evidence be deposited with the clerk of the court for the inspection of the counsel for the defendant.) Supreme Court Justice HARRIS in People v. Kresel (142 Misc. 88) granted an inspection of a copy of the testimony given by defendant before the grand jury which indicted him thereon for perjury, where it was conceded that the evidential matter was in the hands of the People, and was required by the defendant to afford him a fair trial and to prepare a proper defense, notwithstanding that an inspection of the grand jury minutes had previously been denied by another court. (People v. Kresel, 141 Misc. 593.) I think that this case is contrary to all precedents that hold that the district attorney is not bound to disclose his evidence

before trial, and how far it should be followed if at all is a large question. In *People* v. *Radeloff* (140 Misc. 690) a motion requiring the district attorney to furnish photostatic copies of documents, on which the charge was based, was granted. There, after the inspection of the grand jury minutes had been granted and motion to dismiss predicated thereon was denied, the defendant asserted that only a part of the retainer agreement in question had been read to the grand jury, and that a copy of the entire document was necessary to prepare the defense.

In *People* v. *Rogas* (158 Misc. 567) defendant's motion to permit his alienists to examine all statements made by defendant to members of the police department or to members of the district attorney's staff was granted. The court said (at p. 569): " The inspection sought here is of the statements of the defendant. They may * * * be competent against the defendant. If they contain admissions or are confessions, their effectiveness will not be impaired by their inspection by alienists. The moving papers assert that the experts cannot form an opinion without knowledge of what the statements contain. If they are put in evidence against the defendant, they will then be available for inspection * * *. All reasonable opportunity should be afforded defendant to have his defense fully and effectively presented. No reason is urged that irreparable mischief would result from the proposed inspection; no disadvantage would result to the People; no disclosure would be made which would prejudice or handicap them in presenting their case. The proposed inspection may be of incalculable benefit to the defendant. A right sense of justice seems to decree that this is a proper occasion for the exercise by the court of its discretionary power."

Bishop's New Criminal Procedure ([2d ed.] vol. 2, p. 771, § 959d) cites the *Newton* case (*supra*) to support the statement that " occasionally it may be desirable to obtain from the court a preliminary order to permit the inspection, before trial, of something in the opposite party's possession." Courts should never abuse this discretionary power, which at best has its limits and restrictions, especially where its exercise might work injury and injustice to the cause and affect the substantial rights of the parties.

What is particularly lacking here, aside from the law of the case, is a substantial showing that the pistol sought to be inspected contains any material evidence, outside of its general character as a weapon, of any fingerprints. Such motions as this must always be addressed to the court's sound discretion on a proper showing of facts (not hearsay) which would warrant its exercise. (*Massie* v. *People*, 82 Colo. 205; 258 P. 226; *State* v. *Bramhall*, 134 La. 1;

63 So. 603; *State* v. *Clark,* 124 La. 965; 50 So. 811; *State* v. *Lowery,* 160 La. 811; 107 So. 583; *State* v. *Hinkley,* 81 Kan. 838; 106 P. 1088 [dissenting opinion].) Besides, all such applications must be reasonable (*United States* v. *Rich,* 6 Alaska, 670), and they must establish conclusively that fairness demands it. (3 Wigmore on Evidence [2d ed.], p. 997, § 1862.)

Some courts have greatly relaxed the rule of denial in modern cases and have even gone so far as to hold that the defendant is entitled to have a copy of a confession or to inspect a written statement relative to the crime. (*State* v. *Murphy,* 154 La. 190; 97 So. 397; *State* v. *Tippett,* 317 Mo. 319; 296 S. W. 132. Contra, *State* v. *Yeoman,* 112 Ohio St. 214; 147 N. E. 3; *Goode* v. *State,* 57 Tex. Cr. Rep. 220; 123 S. W. 597; *Davis* v. *State,* 99 Tex. Cr. Rep. 517; 270 S. W. 1022; *Santry* v. *State,* 67 Wis. 65; 30 N. W. 226.)

There is no statute in this State available to a defendant in a criminal cause under which, by motion or petition, he may be granted the remedy of discovery and inspection before trial as may be done in civil cases under the present Civil Practice Act. Even the common-law courts were without power before courts of equity gave relief, followed by code enactments. (See *People ex rel. Lemon* v. *Supreme Court, supra,* at p. 29.) In this latter case, Chief Judge CARDOZO wrote: " When we turn to criminal causes, we find a jurisdiction that is even more restricted. There are expressions of opinion that deny the jurisdiction altogether. There are others that seem to limit the disclosure to documents that are the subject of the charge, thus assimilating the practice to the jurisdiction in civil causes that was known at common law. Others concede or assume a broader jurisdiction, one adequate to prevent a failure of justice, yet narrower than discovery in equity or under the statutory substitute. Nowhere has there been a suggestion that the jurisdiction can properly be extended to notes or memoranda in the possession of the prosecutor, but inadmissible as evidence either for prosecution or for defense." The former chief judge cites the King's Bench case (*Rex* v. *Holland, supra*), in which the court said: " The practice on common-law indictments, and on informations on particular statutes, shows it to be clear that this defendant is not entitled to inspect the evidence, on which the prosecution is founded till the hour of trial." Judge CARDOZO goes on to say that later cases are more conciliatory and that " discovery will be ordered if the exhibit is the basis of the charge; " and he adds: " There is some authority for the view that it will be ordered in other cases where the thing to be inspected is admissible in evidence and a failure of justice may result from its suppression." (*Commonwealth* v. *Jordan,* 207 Mass. 259; 93 N. E. 809; *State* v. *Howland,*

100 Kan. 181; 163 P. 1071; 3 Wigmore on Evidence [2d ed.], §§ 1859g, 1863. Contra, 2 Russell on Crimes [7th ed.], 1985, 2096, 2098; 9 Halsbury Laws of England, p. 387, § 752. Cf. *State* v. *Howard*, 191 Iowa, 728; 183 N. W. 482.)

But there is always the contention that deals with the inherent power of the court. The *Lemon* case leaves the whole question open; but there, as here, the court requires the applicant for the remedy of inspection, in advance of trial, to bring his case within the power of the court, if it exists at all.

The *Lemon* case (*supra*) reviews the history of discovery and inspection in advance of a trial allowed both by the common-law courts and courts of equity, and speaks of the exercise of power after the courts were aided by statutory authority, which is referred to as the " borrowing of equitable remedies." Denials in such cases were predicated upon a lack of power, even in civil cases, and inspection of a document to be examined was allowed only when it " was the very subject of the cause." The Court of Appeals (by CARDOZO, Ch. J.) wrote (at p. 29) : " Documents are not subject to inspection for the mere reason that they will be useful in *supplying a clew whereby evidence can be gathered*. Documents to be subject to inspection must be evidence themselves."

In the absence of specific statutory procedure and practice or legal precedents to the contrary, this class of motions for the relief of discovery and examination must be left, because of the conditions in these modern times and the variety of reasons arising often out of complex situations in criminal causes, to the sound judgment of the court in the light of all the circumstances and according to a real sense of the justice of the cause, as may appeal to the individual judge without attempting at this time to lay down a hard and fast rule in the matter. Until either the higher courts lay down a rule or the Legislature prescribes the right and procedure in such cases, trial courts should act slowly and not set up conflicting theories that tend to throw confusion and uncertainty into the administration of criminal justice and the prosecution of criminal cases. It would be difficult to particularize and to create a fit-all for every case which might hereafter arise. Common sense, fair play and justice must be worked out in each individual case. Each case must be made to hinge upon its own development and not be governed by general rules, when specific circumstances and requirements would violate them. Our main objective should be plain justice for all, which at any cost should always be kept alive. At no time should the prosecution be forced so as to invade and prejudice the conserved rights of the People, or denials decreed that work irreparable injustice to the accused.

Proceedings cognizable by this court present, at times prior to trial, motions for various forms of relief either on the side of the prosecution or the defense, and great care and scrutiny must be exercised in all these matters, lest injustice be done. There is no more important preliminary matter than the defendant's preparation for trial. Questions frequently arise how far a court can or should go in requiring a disclosure of some piece of evidence in the hands of the prosecution to enable a defendant to prepare his defense. According to my best judgment, if there be fingerprints on the weapon in this case, and they tend to show that the defendant is not guilty of the offense charged, an examination of them ought to be allowed to the defense for very obvious reasons of justice, unless in doing so a fair prosecution of the People's case would be impaired and prejudiced.

Obviously, from a reading of the cases here cited and others, we have today clashing and contradictory rules and precedents, whereas there should be a definite, fair and clear understanding where the power of the court ends and abuse begins, declared through some superior authority.

In the days of the old common law and Chancery courts, when one wished to receive information through the proper forum, cognizance was taken thereof, and through the different modes of administering justice, relief was allowed by and through the conscience of the court. In invoking and applying these same fundamental principles in these times, judges should not arrogate unto themselves an authority they never had, in what may be termed these rare and extraordinary matters. While courts must never be arbitrary, they should try in conscience to avoid hardship and injustice and prejudice to either side, remembering always what Blackstone wrote in his Commentaries, that we must boast " of being governed in all respects by law and not by will." The ultimate purpose of the administration of the criminal law is to do justice, not blindly, but rather by means that are fair, and that will accomplish the purposes of the law for the protection of society. What part considerations of public policy play in these and similar cases must in a large measure depend upon the merits of the application disclosed by the moving papers, the good faith of the applicant and whether his constitutional rights are safe-guarded and protected, as well as those of the public.

The court in the *Lemon* case (*supra*), where the defendant based her claim to inspect before trial certain data in the possession of the prosecutor as helpful in preparing her defense, said (at p. 34): " What concerns us at the moment is the scope of the remedy available in advance. At such a stage of the contest, a remedy

so drastic is within the condemnation of the rule that inspection may not be had for the sole purpose of prying into the case of one's opponent. The documents to be exhibited must be evidence in support of the cause of action or defense of the party seeking the discovery. (1 Pomeroy's Eq. Juris. § 201; Wigram on Discovery, § 342; Hare on Discovery, pp. 183, 189.) But here the objection is even deeper, more incurable. The documents to be exhibited to this defendant are not evidence for any one. They are merely mnemonic instruments whereby the prosecutor may be better able to elicit evidence hereafter. A mandate giving them publicity is something more than error in the exercise of power. It is an assumption of power where none has been confided." (See, also, *People* v. *Miller*, 257 N. Y. 54, 59.)

Although the holding in *People* v. *Walsh* (262 N. Y. 140) is not directly in point here, because it is expressly limited to the situation where the desired statement is in court, and is to be used for cross-examination, and where the trial judge finds it contains no matter, if published, prejudicial to public interest, the case, nevertheless, is akin to the principles involved here, and by its relationship establishes a useful and helpful guide. (See *People* v. *Davis*, 52 Mich. 569; 18 N. W. 362; *State* v. *Archer*, 32 N. M. 319; 255 P. 396; *Riggins* v. *State*, 125 Md. 165; 93 A. 437; *State* v. *Guagliardo*, 146 La. 949; 84 So. 216; *Centoamore* v. *State*, 105 Neb. 452; 181 N. W. 182. Contra, *United States* v. *Baluyot*, 40 Philippine Rep. 385; *Arnstein* v. *United States*, 296 Fed. 946. Cf. 4 Wigmore on Evidence [2d ed.], §§ 2224, 2284; *People* v. *Becker*, 210 N. Y. 274; *Segurola* v. *United States*, 16 F. [2d] 563; *Wilson* v. *United States*, 59 id. 390; *State* v. *Rhoads*, 81 Ohio St. 397; 91 N. E. 186; *State* v. *Yee Guck*, 99 Ore. 231; 195 P. 363.)

The court wrote at page 150 in the *Walsh* case (*supra*): " *It has always been and still is the rule that the defense has no right to go ' upon a tour of investigation, in the hope that they would find something which would aid them.'* (*Arnstein* v. *United States, supra*, p. 950.) *When, however, it does appear that there is evidence in the possession or control of the prosecution favorable to the defendant, a right sense of justice demands that it should be available, unless there are strong reasons otherwise.*"

My views are expressed at greater length than perhaps were necessary in the confident hope only that the Legislature will soon remedy the situation that causes the courts so much confusion.

If there be any imprints on the pistol with which the indictment alleges this homicide was committed or perpetrated, the defendant should have the right to show that they are not his. The district attorney does not quarrel with this. Rather, he has indicated in

open court that when he gets ready to move the case for trial and should decide to use the weapon, he will afford the defendant an opportunity to examine it. But since this application is based on mere surmise and conjecture that the gun with which the homicide was perpetrated is supposed to have fingerprints of the defendant, his present application must be denied with leave to renew, if he be so advised, upon proof of a proper basis for his request, at which time the merits of the application may be directly passed upon by the court.

Ordered accordingly.