275 P.2d 887

The STATE of Arizona ex rel. William P. MAHONEY, Jr., County Attorney of Maricopa County, Petitioner,

v.

The SUPERIOR COURT of MARICOPA COUNTY, Hon. Henry S. Stevens, one of the Judges thereof, Respondent.

No. 5992.

Supreme Court of Arizona.

Oct. 29, 1954.

William P. Mahoney, Jr., County Atty. of Maricopa County, and James H. Green, Jr., Dep. County Atty., Phoenix, for petitioner.

Marvin Johnson, Phoenix, for respondent.

UDALL, Justice.

The State of Arizona, at the relation of William P. Mahoney, Jr., County Attorney of Maricopa County (hereinafter termed petitioner), sought an original writ of prohibition in this court directed to the Superior Court of Maricopa County and the Honorable Henry S. Stevens, one of the presiding judges thereof (hereinafter designated respondent), to restrain the court from enforcing an order requiring the petitioner to produce certain tangible physical objects in his possession for the inspection of a defendant in a criminal proceeding then pending in said court.

To resolve the important jurisdictional question involved—one of first impression in this state—we issued an alternative writ of prohibition; return, answer and briefs having been filed the matter was ordered submitted as oral argument had been waived. Being fully advised in the premises, we thereupon on October 13, 1954, by a minute order quashed the alternative writ theretofore issued, announcing at the same time that in obedience to constitutional mandate, art. 6, sec. 2, the grounds for our decision would be subsequently given in writing. We now state these reasons.

We think prohibition was properly entertained for the above stated purpose as the order permitting an inspection of objects in the possession of the prosecutor is not the subject of appeal, Rule 419, Cr. Proc., Sec. 44–2508, A.C.A.1939, even had it been entered without jurisdiction. Hence, unless its enforcement can be checked, the State is without a remedy. While the order had already been entered when prohibition was invoked, its force had not been spent, nor its capacity for harm exhausted, as the order had not been complied with. In the case of Pacific Greyhound Lines v. Brooks, 70 Ariz. 339, 220 P.2d 477, 478, we stated:

"'* * * so long as anything remains to be done under a void judgment or order, prohibition may prevent the doing of it.'"

See also, People ex rel. Lemon v. Supreme Court, 245 N.Y. 24, 156 N.E. 84, 52 A.L.R. 200.

The record discloses the following situation: One William Demand had been held to answer to the superior court on a homicide charge. The case having been set for trial on October 19, 1954, upon an informa-

tion charging murder, counsel for defendant filed a motion for production and the opportunity to inspect certain documents, papers and tangible objects then in the possession of the prosecutor, asserting that this was necessary in order for him to properly prepare his defense in the case. The defendant in enumerating the items he wanted to inspect included private memoranda, i. e., the "work product of the prosecutor", as well as tangible physical objects such as pistols, a lead slug taken from the body of the man whom he was accused of killing; a shirt, car keys, etc. The trial court refused to allow an inspection of the former items, but entered an order compelling the State to produce the latter items for the defendant's inspection upon his compliance with certain conditions.

The petitioner contends that under the common law the right of discovery and inspection did not exist in the field of criminal law, and hence in the absence of an authorizing statute or court rule the trial court was wholly without jurisdiction to make the order in question. We agree that the common law as it came to us from England recognized no right of discovery or inspection prior to trial in criminal cases. As stated in Walker v. People, 126 Colo. 135, 248 P.2d 287, 302:

"The right of discovery in criminal cases is not recognized at common law. * * * The genesis of the theory of pre-trial discovery and inspection lies in the rules of equity, which have presently been enlarged in most jurisdictions to apply in practically all civil proceedings. It is readily apparent, however, that the tools of equity are in no wise fitted to the mechanics of the trial of a criminal case. * * *"

See also Shores v. United States, 8 Cir., 174 F.2d 838, 11 A.L.R.2d 635; State v. Haas, 188 Md. 63, 51 A.2d 647; State v. Dorsey, 207 La. 928, 22 So.2d 273, 283. The leading English case is Rex v. Holland, 4 Durn. & E. 691, 4 Term Rep. 691, 100 Eng.Reprints 1248, cited in most American cases on the problem. Therein it was held "there was no principle or precedent to warrant" the granting of an application to inspect evidence contained in a report of a board of inquiry of the East India Company. However, this rule has since been radically changed in England as an incident to the adoption of pre-trial procedure before a committing magistrate, whereby now

"* * * All of the evidence in the possession of the Crown is in the possession of the counsel for the defendant. He knows all that the Crown knows. He has all the evidence in his possession before the witness goes on the stand. He has all the evidence that can be presented in that court at trial, before the trial begins * * *." Wigmore on Evidence, 3d Ed. Volume 6, Section 1850, quoting a lecture given by the Honorable Charles S. Whitman.

Concededly, at present there is no rule of court or statute in Arizona express-

ly authorizing inspection and discovery in criminal cases prior to trial. However, counsel for the respondent urges that the language of Section 44–1811, A.C.A.1939, which reads:

> "The law of evidence, and of instructions and oath to jury, in civil actions shall also apply to criminal actions, except as otherwise provided in this Code",

is broad enough to include the right to grant an inspection under Rule 34 of the Rules of Civil Procedure, Sec. 21–736, A.C.A.1939, providing for "Discovery and production of documents and things for inspection, copying and photographing." With this contention we cannot agree, though there is respectable authority from other jurisdictions with comparable statutes to support such a view. See, State v. Leland, 190 Or. 598, 227 P.2d 785. We do not believe that such an extension or strained statutory construction is warranted.

We believe, however, that the order in question can be sustained under the inherent powers of the court necessary to the due administration of justice. The "inherent powers" of a court are an unexpressed quantity and undefinable term, and the courts have indulged in more or less loose explanations concerning it. Undoubtedly, courts of justice possess powers which were not given by legislation and which no legislation can take away. These are "inherent powers" resident in all courts of superior jurisdiction. These powers spring not from legislation but from the nature and constitution of the tribunals themselves.

In 14 Am.Jur., Courts, section 171, this statement appears:

> "The 'inherent powers' of a court are such as result from the very nature of its organization and are essential to its existence and protection *and to the due administration of justice*. It is fundamental that every court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction. * * *" (Emphasis supplied.)

See also, 21 C.J.S., Courts, §§ 31 and 86. Matters illustrative of such powers are: maintaining its dignity as a court, securing obedience to its process and rules, and punishing unseemly behavior.

Justice Lockwood, speaking for this court in the case of State ex rel. Andrews v. Superior Court, 39 Ariz. 242, 5 P.2d 192, 195, gives an excellent statement relative to such powers. That was a certiorari proceeding testing jurisdiction to enter an "inspection order" in the famous Winnie Ruth Judd murder case. The court quashed the order as having been entered without jurisdiction because it was done prior to the filing of an information, holding there was no "case" or "proceeding" then pending before the superior court. Speaking of its inherent powers, it was stated therein:

" * * * There is, however, one important and indeed vital limitation on these powers. They must be such as are necessary for the ordinary and efficient exercise of jurisdiction, and therefore *exist only when the jurisdiction to maintain which they are necessary, is first established.*"

In the instant case the above limitation is inapplicable because jurisdiction had attached when the information was filed.

The question thus resolves itself to this: was the order of inspection so necessary to the due administration of justice as to fall within the scope of these inherent powers? The problem has arisen in a few other jurisdictions. The leading case is People ex rel. Lemon v. Supreme Court, 245 N.Y. 24, 156 N.E. 84, 86, 52 A.L.R. 200, supra (authored by Justice Cardozo), wherein it is stated:

" * * *. The decision of this case does not require us to affirm or deny the existence of an inherent power in courts of criminal jurisdiction to compel the discovery of documents in furtherance of justice. The beginnings or at least the glimmerings of such a doctrine are to be found, as we have seen, in courts other than our own. * *"

When this decision was rendered (1927) there were but few cases recognizing the power of the court to compel an inspection of evidence in possession of the prosecutor. However, since that time, the majority of the courts confronted with the problem and having no statute or rule governing the matter have recognized the inherent power of the court to enter such an order. State ex rel. Wagner v. Circuit Court of Minnehaha County, 60 S.D. 115, 244 N.W. 100. For excellent discussions of the entire doctrine, see People v. Gatti, 167 Misc. 545, 4 N.Y.S.2d 130; State v. Dorsey, 207 La. 928, 22 So.2d 273, supra; State v. Haas, 188 Md. 63, 51 A.2d 647, supra; Shores v. United States, 8 Cir., 174 F.2d 838, 11 A.L.R.2d 635, supra. The latest contra case is Walker v. People, 126 Colo. 135, 248 P.2d 287, supra, which decision, in our opinion, is considerably weakened by two other decisions of the same court, viz.: Massie v. People, 82 Colo. 205, 258 P. 226, and Rosier v. People, 126 Colo. 82, 247 P.2d 448. In these latter cases it is stated that the entry of such an order is discretionary and yet they were not overruled or even mentioned in the more recent Walker case.

It should be noted that the respondent court very properly denied the defendant an inspection of the items consisting of mnemonic instruments and documents that were not and could not be evidence in themselves. 17 Am.Jur., Discovery and Inspection, section 25; 23 C.J.S., Criminal Law, § 1036. The inspection was thus limited to the demonstrative evidence heretofore enumerated; furthermore the order expressly prescribed safeguards against any possible substitution or trickery.

We do not share the fears of the petitioner that the whole system of criminal

law will be subverted by allowing an order of inspection such as this to stand. As the Supreme Court of Louisiana stated in the case of State v. Dorsey, supra [207 La. 928, 22 So.2d 285]:

"* * * The State * * * does not want to secure convictions by any unfair concealment or surprise. It is the duty of the State to concern itself as much in having the innocent acquitted as in securing the conviction of the guilty, and the State is desirous of giving every accused person a fair and reasonable opportunity to make his defense. * * *"

We are not unmindful that there are constitutional privileges granted a defendant in a criminal case which place upon the prosecution a heavy burden in the preparation and presentation of its case, but we cannot see how permitting the defendant an inspection at his expense, where a proper showing is made, adds to that burden. It seems apparent that there are times when to deny this privilege prior to trial might result in the hearing itself being delayed—at a considerable expense to the State—while such an examination or tests are made. We believe justice dictates that the defendant be entitled to the benefit of any *reasonable* opportunity to prepare his defense and to prove his innocence. Even so, it should be noted that the authorities hold as a general rule the accused is not, *as a matter of right,* entitled to have evidence which is in the possession of the prosecution for inspection before trial. 14 Am.Jur., Criminal Law, section 210. This is a matter peculiarly within the trial court's discretion. State v. Clark, 21 Wash.2d 774, 153 P.2d 297. The defense has no right to go upon a tour of investigation, in the hope that they will find something to aid them, People v. Gatti, supra, and if it appears that the request for such an inspection is merely "a fishing expedition to see what may turn up" it should be denied. 17 Am.Jur., p. 8 Cum.Supp.

Finally it should be noted that this court has previously discussed the doctrine, and while it was dicta in that case—Mr. Justice Lockwood speaking for the court, stated:

"We are of the opinion that such a rule is in the interest of justice, and that it is left to the sound discretion of a trial court when a proceeding is pending therein as to whether such inspection and examination should be allowed or not * * *." State ex rel. Andrews v. Superior Court, supra.

We have concluded and therefore hold that the trial court under its inherent powers had jurisdiction to enter the inspection order in furtherance of the due administration of justice. For reasons stated herein the alternative writ of prohibition theretofore issued was ordered quashed.

PHELPS, C. J., and STANFORD, LA PRADE and WINDES, JJ., concur.