PEOPLE *v.* JOHNSON.

1. CRIMINAL LAW—TRIAL.
   A criminal trial is an inquiry primarily directed toward the fair ascertainment of truth.

2. SAME—DISCOVERY.
   Discovery will be ordered in a criminal case, where the thing to be inspected is admissible in evidence and a failure of justice may result from its suppression.

3. SAME—CONFESSION.
   The power of control over a confession and its use in a criminal trial exists independently of court rule or statute and the government may be required to furnish defendant with a copy of his confession, where it is deemed necessary in the interest of justice.

4. SAME—INSPECTION OF CONFESSION—DISCRETION OF COURT.
   An order to allow inspection of a written confession taken by a prosecuting attorney from an accused person rests within the sound discretion of the trial judge.

5. SAME—INSPECTION OF CONFESSION—BURDEN OF PROOF.
   One seeking an order to compel the prosecution to allow inspection of a written confession has the burden of showing the trial court facts indicating that such inspection is necessary to preparation of his defense and in the interest of a fair trial.

REFERENCES FOR POINTS IN HEADNOTES
[2, 4, 8]  17 Am Jur, Discovery and Inspection § 32.

6. SAME—INSPECTION OF CONFESSION—COUNTER SHOWING.

An order to require the prosecution to permit defendant in a criminal trial to inspect his written confession where shown to be necessary to prepare for his defense and in the interest of a fair trial should be granted in the absence of a more compelling showing by the people of facts tending to prove that such an order would unfairly hamper the prosecution or do a disservice to the public interest.

7. SAME—ADMISSION OF EVIDENCE.

A trial court has inherent power to control the admission of evidence in a criminal prosecution so as to promote the interests of justice.

8. SAME—INSPECTION OF CONFESSION—TEMPORARY INSANITY—OPINION OF PSYCHIATRISTS.

Order of trial court entered in prosecution for first-degree murder of defendant's wife, which denied defendant's motion to permit his psychiatrist the right to inspect defendant's written statement in order to render psychiatric opinion upon issue of defendant's plea of temporary insanity is reversed, where denial was based on trial court's belief it did not lie within his power to grant it.

Appeal from Calhoun; Steinbacher (Harold E.), J. Submitted May 22, 1959. (Docket No. 70, Calendar No. 48,156.) Decided July 13, 1959.

Herbert L. Johnson was charged with murder. His motion to require prosecuting attorney to permit inspection of statement or confession was denied. Defendant appeals. Reversed and remanded.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *Noble O. Moore,* Prosecuting Attorney, for the people.

*James B. Stanley* and *Milo O. Bennett,* for defendant.

EDWARDS, J. Defendant Herbert L. Johnson is charged with murder of his wife. Defendant's coun-

sel has filed notice of a defense of temporary insanity.

He also filed a motion for an order requiring the prosecuting attorney to produce the transcript of defendant's confession taken August 12, 1958, shortly after the death of his wife. In support of his motion, defendant presented an affidavit from a psychiatrist which stated that the pyschiatrist had been retained to give a professional opinion pertaining to the defense of temporary insanity; that all of the facts, including statements of defendant immediately after the death, were relevant as showing his state of mind; that defendant had not been able to relate completely what he had said to the police in a statement taken shortly after the death; and that the psychiatrist regarded inspection of defendant's statement as a necessary preliminary to the psychiatric opinion he had been asked to render.

The trial judge appointed a sanity commission which found defendant sane. The case was then called for trial before any order was entered upon the motion referred to above, but a mistrial resulted during examination of the jury panel.

Prior to retrial, on January 23, 1959, the trial judge denied the motion under consideration, holding "that there is no statute, case or rule in this State which in a criminal case provides for or authorizes any discovery such as defendant requests." Defendant then sought leave to appeal to this Court which was granted February 19, 1959.

The legal concept of a criminal trial has changed considerably in modern times. It is seen less as an arena where 2 lawyer gladiators duel with the accused's fate hanging on the outcome and more as an inquiry primarily directed toward the fair ascertainment of truth.*

---

* "The purpose of broad discovery is 'to promote the fullest possible presentation of the facts, minimize opportunities for falsification of

It is certain that at common law no defendant had any right to the discovery of any of the evidence possessed by the prosecution. *Rex* v. *Holland* (1792), 4 TR (Durnford & East) 691 (100 Eng Rep 1248); 6 Wigmore, Evidence (3d ed), § 1859g; 52 ALR 207, annotation—Right of accused to inspection or disclosure of evidence in possession of prosecution; 17 Am Jur, Discovery and Inspection, § 32. And in various instances this has been held to apply to confessions or statements made by the defendant. *People* v. *Parisi*, 270 Mich 429; *State* v. *Kupis*, 37 Del (7 W W Harr) 27 (179 A 640); *State* v. *Tune*, 13 NJ 203 (98 A2d 881); *Steensland* v. *Hoppmann*, 213 Wis 593 (252 NW 146).

The basic problem with which we deal in this case was discussed at length by Justice Cardozo in a leading case decided in the New York court of appeals, *People, ex rel Lemon,* v. *Supreme Court*, 245 NY 24 (156 NE 84, 52 ALR 200). The case resulted in a writ of prohibition which in effect reversed a discovery order pertaining to statements taken by the prosecuting attorney from witnesses other than the defendant. But the opinion of the court clearly outlined the tendency on the part of criminal courts to order discovery where the interests of justice so required (pp 30–32):

"Discovery will be ordered if the exhibit is the basis of the charge, as, *e.g.,* where the indictment is for sending a threatening letter (*Rex* v. *Harrie,* 6 Car & P 105 (172 Eng Rep 1165); *cf. People* v. *Bellows,* (NY) 1 How Pr [NS] 149). There is some authority for the view that it will be ordered in other cases where the thing to be inspected is admissible in evidence and a failure of justice may result from its suppression. Thus, in *Regina* v. *Spry and Dore* (Eng), 3 Cox CC 221, an inspection of the con-

evidence, and eliminate the vestiges of trial by combat.' " *State* v. *Tune,* 13 NJ 203, 210 (98 A2d 881, 884), Mr. Justice Vanderbilt quoting 60 Yale LJ 626.

tents of the stomach was permitted in a prosecution
for homicide. In *People* v. *Gerold,* 265 Ill 448 (107
NE 165, Ann Cas 1916A, 636), a county treasurer
charged with defalcation was held to have the right
to inspect official books and documents. In *Common-
wealth* v. *Jordan,* 207 Mass 259 (93 NE 809), a prose-
cution for murder, there was recognition of the pow-
er to permit an inspection of portions of the body
taken at the time of the autopsy by the medical ex-
aminer and also weapons and other exhibits in the
possession of the public prosecutor, though the court
refused the order in the exercise of discretion. Other
cases point the same way with more or less distinct-
ness (See, *e.g., Newton* v. *State,* 21 Fla 53; *Daly* v.
*Dimock,* 55 Conn 579 [12 A 405]; *State* v. *Howland,*
100 Kan 181 [163 P 1071]). The power frequently
asserted to compel the return of property illegally
impounded is based upon the assumption of a super-
visory jurisdiction over the acts of public prose-
cutors (*Weeks* v. *United States,* 232 US 383, 398
[34 S Ct 341, 58 L ed 652, LRA1915B, 834, Ann Cas
1915C, 1177]; *People* v. *Chiagles,* 237 NY 193, 199
[142 NE 583, 32 ALR 676]; *cf.* Kenny, Outlines of
Criminal Law, 477, citing *Regina* v. *Puddick,* 4 F & F
497 [176 Eng Rep 662]). There may be something
of kinship here to the power to compel inspection in
furtherance of justice. Argument earnestly uphold-
ing the latter jurisdiction, though conceding much
authority against it, will be found in Mr. Wigmore's
treatise (3 Wigmore, Evidence [2d ed], § 1859–g,
§ 1863; *cf.* 2 Bishop, New Criminal Procedure [2d
ed], § 959–d). There are pronouncements, however,
to the contrary in the works of learned commentators
(2 Russell on Crimes [8th ed], pp 1985, 2096, 2098;
9 Halsbury Laws of England, p 387, § 152; *cf. State*
v. *Howard,* 191 Ia 728 [183 NW 482]). *  *  *

"The supervisory control, whatever it may be,
that belongs to courts of common law in respect of a
criminal prosecution, is an autochthonous growth, a
thing evolving from within."

And the court carefully distinguished the case from one in which discovery of a confession was sought (p 33):

"She does not ask that she inspect any confession made in her name and admissible against her. Conceivably such inspection may be necessary at times, as, for instance, to enable a defendant to prove the forgery of a signature."

In more recent times, the inherent control of the court over the confession is frequently spelled out in cases where the court did not find that the ends of justice required the particular discovery order sought.

"We think that such a power of control over a confession and its use does exist in a judicial proceeding, as part of the inherent nature and dignity of our system of administering criminal law, and that even without any rule or statute, therefore, the court is not powerless to require the government to furnish the defendant with a copy of his confession, if the government intends to use it as evidence on the trial and where the court deems it necessary in the interest of justice that the defendant should be furnished with a copy.    *    *    *

"An exercise of the power to require the government to furnish the defendant with a copy of his confession would, of course, be wholly a matter of judicial grace.  There could hardly be any need to exercise it, where the attempt to obtain a copy manifestly was simply a part of a blunderbuss-roving, so that the privilege thereby would tend to reach the stature of an absolute right.  But there may be cases where the circumstances are such that the judicial conscience properly feels that the interest of justice will be best served by allowing the defendant before trial to have a copy of his confession." *Shores* v. *United States* (CCA8), 174 F2d 838, 845 (11 ALR2d 635).

See, also, *Cicenia* v. *LaGay,* 357 US 504 (78 S Ct 1297, 2 L ed 2d 1523) ; *People* v. *Gatti,* 167 Misc 545 (4 NYS2d 130) ; *State* v. *Clark,* 21 Wash2d 774 (153 P2d 297) ; *People* v. *Skoyec,* 183 Misc 764 (50 NYS2d 438) ; 48 Jour Crim Law 305 (1957–1958)—The right of an accused to obtain pretrial inspection of his confession.

The United States supreme court has recently held that failure to allow defendant to inspect his confession prior to pleading to an indictment does not constitute a denial of due process. *Cicenia* v. *La-Gay, supra.* But the holding was based upon "absence of a showing of prejudice," and the case recognized the discretionary power of the trial court to grant or deny inspection. See *Leland* v. *Oregon,* 343 US 790 (72 S Ct 1002, 96 L ed 1302).

In a Louisiana case, the supreme court of Louisiana seemed to hold that a defendant in a criminal case had a constitutional right to inspect and copy his written confession held by the prosecuting attorney. *State* v. *Dorsey,* 207 La 928, 965, 966 (22 So2d 273). *Cf. State* v. *Lea,* 228 La 724 (84 So2d 169).

In a New York case, closest to our instant facts, where the defendant's statement was sought for purpose of use by psychiatrists, the court held the proposed inspection consistent with "a right sense of justice" and within the court's discretionary power. *People* v. *Rogas,* 158 Misc 567 (287 NYS 1005). *Cf. People* v. *Skoyec, supra.*

The most recent and thorough consideration of this general problem by a State supreme court has taken place in New Jersey. In *State* v. *Tune, supra,* the supreme court divided 4–3 to reverse a trial judge's order granting inspection of a confession. Justice Vanderbilt's majority opinion, acknowledging that the matter was within the sound discretion of the trial judge, held the showing made by the accused was insufficient to warrant the order and

hence the judicial discretion had been abused. Justice Brennan, for the minority, argued vehemently for a more liberal view both of the facts bearing upon judicial discretion and the right of discovery in criminal cases.

The same general problem came back before the same court in 1958, with the authors of the opinions in the *Tune Case* both replaced.

Chief Justice Weintraub, for a 6-man majority, reiterated and interpreted the discretionary power of the trial judge to order inspection of a confession made by accused, in well-reasoned language:

"[1] We subscribe to the rule of *Cicenia*,* now embodied in R R 3:5-11, and also to the view of the majority in *Tune* that 'sound discretion' means 'one that is neither arbitrary, vague nor fanciful' (13 NJ at page 222). In some areas an exercise of discretion must necessarily remain an intuitive response to a set of facts. Here, however, some guiding criteria can be prescribed and hence should be, to guard against arbitrariness and unequal treatment and to avoid if possible the unsatisfactory alternative of a post-trial inquiry into a claim of prejudicial error.

"We start with the premise that truth is best revealed by a decent opportunity to prepare in advance of trial. We have embraced that tenet with respect to civil litigation, and absent overriding considerations, it should be as valid in criminal matters. It is of no moment that pretrial inspection is not constitutionally assured. *Cicenia* v. *LaGay* (1958), 357 US 504 (78 S Ct 1297, 2 L ed2d 1523). We are not limited to constitutional minima; rather we strive for practices which will best promote the quest for truth. It may be added that although *Cicenia* v. *LaGay* found the Fourteenth Amendment to be unoffended, yet it observed (p 511) that 'it may be the "better practice" for the prosecution to comply with a request for inspection.'  *  *  *

* *State* v. *Cicenia*, 6 NJ 296 (78 A2d 568).—REPORTER.

"It is difficult to understand why a defendant should be denied pretrial inspection of his own statement in the absence of circumstances affirmatively indicating disservice to the public interest.   *   *   *

"[2] The need for an opportunity to prepare to deal with a defendant's statement must be evident. If voluntariness is in issue, the content of the confession may be revealing.   Counsel would need time to explore thoroughly the truth of the factual assertions therein, to inquire whether it contains anything more than the State knew at the time when defendant was apprehended, and to consider whether the content itself supports or negates the defendant's claim of involuntariness.   Pretrial inspection may be equally necessary even though defendant concedes he freely gave the statement.   This is so because the impact of the statement upon guilt may turn upon how the facts are stated, or upon the absence of exculpatory facts which a defendant may claim were revealed to the interrogator or would have been revealed if the inquiry had been complete.   In murder cases in which guilt is not disputed, the manner of expression or the omission of palliative circumstances may have additional significance because of their influence upon the jury's determination as to punishment.   Or the confession may contain prejudicial material which should be exscinded and as to which counsel should not be required to make a hurried decision in the courtroom.   The possible situations may be multiplied.   The virtue of the adversary approach to a trial lies precisely in the opportunity for a full and fair presentation, and hence where the State has had a unilateral examination of a defendant, he should be enabled, as far as feasible, to prepare to explore the completeness and fairness of a policeman's or prosecutor's development of the story in the confession.

"In the foregoing, we speak of what *may* be the significance of pretrial inspection.   The fact is that counsel for a defendant does not know or cannot be sure whether he needs the inspection until he has

had it. It is no answer to say that a defendant 'must remember' what he said. If the defendant actually does remember, it cannot harm the State to furnish a copy. But as every trial lawyer knows, witnesses do not recall their statements with precision or detail. And when one considers the emotional sway which likely attends a wholly voluntary confession of crime, particularly of murder, it is idle to assert that a defendant 'must remember.' " *State* v. *Johnson*, 28 NJ 133, 136–138 (145 A2d 313).

We believe that the best modern authority holds that an order to allow inspection of a written confession taken by a prosecuting attorney from an accused person rests within the sound discretion of the trial judge. *State* v. *Tune, supra; State* v. *Johnson, supra; Shores* v. *United States, supra; People* v. *Rogas, supra; People* v. *Gatti, supra; Cicenia* v. *La-Gay, supra.* We believe further that petitioner for such an order bears the burden of showing the trial court facts indicating that inspection of the confession is necessary to preparation of his defense and in the interest of a fair trial (*State* v. *Johnson, supra*), and not simply a part of a fishing expedition (*People, ex rel Lemon,* v. *Supreme Court, supra; People* v. *Gatti, supra*). On such a showing, the petition should be granted absent a more compelling showing by the people of facts tending to prove that such an order would unfairly hamper the prosecution or do a disservice to the public interest (*State* v. *Johnson, supra*).

We are aware, of course, that appellant's claim in the instant case is founded upon no Michigan rule or statute. We believe the discretion we speak of is found in the inherent power of the trial court to control the admission of evidence so as to promote the interests of justice.

See, also, *People* v. *Dellabonda*, 265 Mich 486; *Shores* v. *United States, supra.*

The trial judge in this case clearly denied this motion in the belief that it did not lie within his power to grant it. We reverse and remand for further proceedings upon the motion consistent with this opinion.

Reversed and remanded.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, VOELKER, and KAVANAGH, JJ., concurred.