*In re* BAY PROSECUTOR

(BAY COUNTY PROSECUTOR v BAY COUNTY DISTRICT JUDGE)

Docket No. 52951. Submitted June 5, 1981, at Grand Rapids.—Decided September 10, 1981. Leave to appeal applied for.

Gary M. Bellor was charged with negligent homicide. At his preliminary examination, the court was informed that the prosecutor had refused to give copies of certain police reports to defense counsel. The district court adjourned the hearing without setting a date for the hearing to resume in an effort to force disclosure of the reports. The prosecutor sought superintending control in Bay Circuit Court, which entered a writ, instructing the district court to conduct a preliminary examination. The district court thereupon scheduled the hearing at which Bellor moved for dismissal on the grounds that he was denied his right to a speedy trial and that the prosecutor's action constituted an obstruction of justice. The district court granted defendant's motion. The prosecutor again sought superintending control in Bay Circuit Court, which entered a writ vacating the order of dismissal and reinstated the charges, Eugene C. Penzien, J. Bellor and the district judge appeal. *Held:*

1. The record fails to disclose any prejudice to Bellor occasioned by the delay in his preliminary examination. Defense counsel failed to seek the court's assistance for discovery of the information in the police reports and appears to have attempted to use the delay to his client's advantage.

2. The prosecutor's interference with certain witnesses was intended to obstruct the defense. Reversal is not required, however; remedial measures were available to the defense, but defense counsel elected not to avail himself of them and now cannot claim prejudice.

3. The prosecutor's failure to provide the defense with copies

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 414.
[2, 3] 7 Am Jur 2d, Attorneys at Law § 72.
   63 Am Jur 2d, Prosecuting Attorneys § 27.
[3] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit § 53.

of certain police reports based on a policy of refusing to provide such reports regardless of the stage of criminal proceedings at which they were sought is an inexcusable obstruction of justice. The district court properly dismissed the charges against the defendant.

The writ of superintending control is quashed, and the district court's order of dismissal is reinstated.

1. CRIMINAL LAW — PRELIMINARY EXAMINATION — STATUTES.

A preliminary examination of a person charged with a felony must be set within 12 days after he is brought before a magistrate, and failure to so examine the accused within that period without any explanation for the delay constitutes error, but the error is harmless and does not require reversal where no prejudice to the accused is shown (MCL 766.4; MSA 28.922).

2. PROSECUTING ATTORNEYS — INTERFERENCE WITH WITNESSES.

A prosecutor's unsolicited advice to witnesses which clearly indicates that he does not wish them to talk to a defense attorney may amount to interference with witnesses in violation of the prosecutor's duty to secure justice (Code of Professional Responsibility and Canons, DR 7-109[A], [B], EC 7-13).

3. PROSECUTING ATTORNEYS — OBSTRUCTION OF JUSTICE — DISMISSAL.

A prosecutor's policy not to provide a defendant with a copy of a police report concerning the defendant regardless of the state of a criminal proceeding is an inexcusable obstruction of justice; fundamental fairness requires that a defendant be given an adequate opportunity to prepare his defense, including being given access to all relevant information, and where the prosecutor obstructs the defense a trial court may dismiss the charges against the defendant.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *James M. Hammond,* Assistant Prosecuting Attorney, for plaintiff.

*Patterson, Gruber & Kennedy, P.C.,* for defendants.

Before: R. B. BURNS, P.J., and ALLEN and T. GILLESPIE,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

R. B. BURNS, P.J. Gary Mark Bellor was charged with negligent homicide, MCL 750.324; MSA 28.556, on January 29, 1980. He was arraigned before Bay County District Judge Paul Harvey, the codefendant in this action, on February 6, 1980. At the outset of the preliminary examination on February 14, 1980, Judge Harvey learned that the prosecutor refused to give Bellor's attorney copies of the police reports. The court adjourned the hearing without date to force disclosure of these reports. On April 11, 1980, Judge Ira W. Butterfield, of the Bay County Circuit Court, entered a writ of superintending control, instructing Judge Harvey to proceed with the preliminary examination. Judge Harvey responded by scheduling the hearing for May 12, 1980, at which time he heard and granted Bellor's motion to dismiss for failure to afford a speedy trial and the prosecutor's obstruction of justice. The prosecutor brought a second action in Bay County Circuit Court, and, on July 22, 1980, Circuit Judge Eugene C. Penzien vacated Judge Harvey's order of dismissal and reinstated the charges. Bellor and Judge Harvey appeal this order.

Bellor's negligent homicide charge arose out of an automobile accident which occurred on December 21, 1979. Originally, he was charged with driving under the influence of alcohol, MCL 257.625; MSA 9.2325. Subsequently, the person who was injured in the accident died. After Bellor's arraignment before Judge Harvey on February 6, 1980, his attorney, Mr. Kennedy, filed a written request for copies of the police reports from the accident. In addition, he spoke in person to an assistant prosecutor who refused to provide copies of the reports but, instead, read portions from the reports to him.

Only three persons observed the accident: the decedent, Mr. Bellor, and Mr. Robert Dale Frasier. Neither Mr. Bellor nor Mr. Frasier could recall how the accident occurred. Thus, the only witnesses were the five state police officers and a pathologist who investigated the accident.

During the preliminary examination on February 14, 1980, Bellor's attorney called Judge Harvey's attention to his unsuccessful efforts to obtain the police reports. The following colloquy then took place:

"*The Court:* Why don't we—why don't we get a copy of that police report forthwith, so that he can have it for review here of the examination and in preparation for his cross-examination.

"*Mr. Hammond [assistant prosecutor]:* Fine, your Honor, I've got a copy here, it's my file copy Mr. Kennedy can use this during the course of the direct for cross-examination.

"*Mr. Kennedy [defendant's counsel]:* Is the court ordering that I be permitted to have a copy? I don't want to be marking on it, and making notes on it if he's gonna take it back.

"*The Court:* I'm sure that you're entitled to it.

"*Mr. Hammond:* Your Honor, I—I don't know of any authority for that proposition. I will certainly let Mr. Kennedy use it, however, I can't give him a copy of it.

"*Mr. Kennedy:* I think the Michigan Freedom—

"*The Court:* Any reason why we can't make a copy? I'll recess it long enough so that we can get a copy.

"*Mr. Hammond:* Your Honor, it is the policy of our office as this court and Mr. Kennedy well knows that we don't give out copies of police reports. We have been asked not to do so by the police agencies. If Mr. Kennedy was in earnest in his request—

"*The Court:* No—no reason in the world why a police report should not always be available."

The court then adjourned the preliminary exam-

ination without date. Immediately thereafter, an incident occurred in the courtroom involving the prosecutor, Mr. Hammond. Bellor's attorney promptly requested the court to permit him to relate the events on the record. He stated:

"*Mr. Kennedy:* Your Honor, I'd like to continuing *[sic]* this matter of Gary Mark Bellor, I'd like to indicate that after the preliminary examination was adjourned, because the prosecutor would not provide copies of the police report pending an appellate decision on that matter. I asked a couple of the officers including the officer who had done the diagram and sketches, which I could not get when I was in the prosecutor's office, if he'd go over some of these things so I'd better understand myself what happened. We were involved in having just such a discussion when Mr. Hammond came back in and said, 'You guys don't have to talk to him. If he wants it he can wait until the appellate court orders that he gets it.' And at which point the discussion began to break down and then he starts backing off and says, 'Well, I didn't say they didn't have to talk to ya. I said it was up to them whether they talked to you or not.'

"Ask—informed him that he have some objection to me finding out what happened or determining what went on. He said, 'Well, they don't have to talk to you if they don't want to.' The investigating officer then told —chief investigation officer, then told the other officers, 'Well, let's go. We don't have to talk to you, the prosecutor says we don't have to talk to you so we're not going to.' "

On March 3, 1980, Judge Harvey heard the prosecutor's motion to schedule the preliminary examination. Mr. Hammond argued that, although the prosecutor's policy prohibited him from giving Mr. Kennedy a copy of the police report, he was willing to loan it to him during the hearing. Judge Harvey then asked Mr. Kennedy if he was prepared to proceed with the examination without the

reports. He responded that he was not. Mr. Kennedy then moved to dismiss the charges against Mr. Bellor. Reluctantly, Judge Harvey declined to grant the motion to dismiss at that time.

Circuit Judge Ira W. Butterfield, on April 11, 1980, entered a writ of superintending control, instructing District Court Judge Harvey to conduct the preliminary examination. This was based on Judge Butterfield's determination that the Freedom of Information Act, MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.,* did not require disclosure of police reports by the prosecuting attorney.

Judge Harvey then scheduled the preliminary examination for May 12, 1980. Bellor's attorney moved for dismissal, which was also scheduled to be heard on May 12. At the outset of the hearing, the motion was argued and considered by the court. Judge Harvey granted the motion and dismissed the charges.

The prosecution thereupon brought another action in Bay County Circuit Court, seeking a second writ of superintending control or appeal. Circuit Judge Eugene C. Penzien entered an opinion and order on July 22, 1980, wherein he vacated Judge Harvey's order of dismissal. Judge Penzien determined that a defendant has no right to every police report in the prosecutor's file. As to the incident wherein the prosecutor instructed witnesses to stop talking with defense counsel, Judge Penzien found that it was unlikely that Judge Harvey was present, as he claimed, and that no notice of the subsequent proceeding was given to the prosecutor in which defense counsel made a record of the incident.

On appeal the defendants raise three issues.

The first issue raised is whether Bellor is entitled to a dismissal of the charges where the pre-

liminary examination is conducted three months after the arraignment. MCL 766.4; MSA 28.922 reads:

"The magistrate before whom any person is brought on a charge of having committed a felony shall set a day for a preliminary examination not exceeding 12 days thereafter, at which time a magistrate shall examine the complainant and the witnesses in support of the prosecution, on oath and in the presence of the accused, in regard to the offense charged and in regard to any other matters connected with the charge which the magistrate considers pertinent."

*People v Robinson,* 41 Mich App 259; 199 NW2d 878 (1972), held that a 24-day delay of a preliminary examination without any explanation as to the reason for the delay was error, but in order for such error to constitute error requiring reversal, prejudice must be shown.

The record before us fails to disclose any prejudice. The prosecutor had read the police reports to the defense attorney. The prosecutor had offered to let the defense attorney use the reports. The defense attorney failed to seek the court's assistance for requiring the prosecution's witnesses to submit to depositions. It would appear that the defense attorney sought to use the delay to his client's advantage rather than employing alternative methods of discovery. Under the circumstances he cannot now claim prejudice.

The next issue is whether Bellor is entitled to a dismissal of the charges where the prosecutor informed witnesses that they did not have to speak to defense counsel.

The Code of Professional Responsibility provides:

"(A) A lawyer shall not suppress any evidence that he or his client has a legal obligation to reveal or produce.

"(B) A lawyer shall not advise or cause a person to secrete himself or to leave the jurisdiction of a tribunal for the purpose of making him unavailable as a witness therein." DR 7-109(A), (B).

A special duty is placed upon a prosecutor:

"The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict. This special duty exists because: (1) the prosecutor represents the sovereign and therefore should use restraint in the discretionary exercise of governmental powers, such as in the selection of cases to prosecute; (2) during the trial the prosecutor is not only an advocate but he also may make decisions normally made by an individual client, and those affecting the public interest should be fair to all; and (3) in our system of criminal justice the accused is to be given the benefit of all reasonable doubts. With respect to evidence and witnesses, the prosecutor has responsibilities different from those of a lawyer in private practice: the prosecutor should make timely disclosure to the defense of available evidence, known to him, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment. Further, a prosecutor should not intentionally avoid pursuit of evidence merely because he believes it will damage the prosecution's case or aid the accused." EC 7-13.

In *People v Bellanca,* 386 Mich 708, 714; 194 NW2d 863 (1972), the Court stated:

"We are convinced that to be truly effective, counsel must be properly prepared for cross-examination of the prosecution's witnesses and thus he must have access to the testimony of such witnesses before the grand jury touching on the matters in issue at the examination."

In *People v Harley,* 49 Mich App 729, 733; 212 NW2d 810 (1973), our Court stated:

"There is no question that interference, intimidation and threats by the prosecutor to a witness constitutes grounds for reversal, since such actions usually deprive the defendant of his right to a fair trial. *People v Pena,* 383 Mich 402; 175 NW2d 767 (1970); *People v Butler,* 30 Mich App 561; 186 NW2d 786 (1971). While we condemn the prosecutor for his attempts to pervert the ends of justice, we find that no reversible error resulted therefrom. The record clearly indicates that the trial court's assurances to the witness purged the possible taint left by the prosecutor's actions."

See also *People v Russell,* 47 Mich App 320, 323; 209 NW2d 476 (1973).

In the present case, it is obvious from the circumstances that the prosecutor intended to obstruct the defense attorney from interviewing the police officers. The prosecutor's unsolicited advice to the witnesses clearly indicated that he did not want them to talk to the defense attorney. In our opinion the prosecutor deliberately interfered and did so in violation of his duty to secure justice.

However, like in *Harley, supra,* remedial measures were available. Defense attorney could have sought judicial assistance to obtain the officers' testimony during the discovery phase. Since defense counsel elected not to seek the assistance available, he now cannot claim prejudice.

Finally, Bellor argues that the charges should be dismissed since the prosecutor failed to provide a copy of the police investigation reports to defense counsel.

In *People v Aldridge,* 47 Mich App 639, 646; 209 NW2d 796 (1973), this Court stated:

"The prosecutor's office, as the people's representative, insures the fairness within our system of justice by seeking the ascertainment of truth as a goal in addition to its adversary function. In *People v Jordan,* 23 Mich

App 375, 387 [178 NW2d 659] (1970), this Court quoted the following language from *Hurd v People,* 25 Mich 405, 416 (1872): 'The prosecuting officer represents the public interest, which can never be promoted by the conviction of the innocent'. These principles were adhered to by the Court in *People v Wimberly,* 384 Mich 62, 69 [179 NW2d 623] (1970), which held that *'prior to trial* the trial judge possesses the discretion *in the interests of a fair trial* to release any and all of the grand jury testimony relevant to the guilt or innocence of the defendant to the crime charged'. (Second emphasis added.) While recognizing that the cited cases are factually distinguishable as involving the disclosure of evidence valuable to defendant, their pronouncements envisage the fundamental fairness indispensable to our judicial system."

See also *People v Johnson,* 356 Mich 619, 621; 97 NW2d 739 (1959).

The prosecutor's policy of refusing to provide a copy of police reports to defendants, when examined in light of *Aldridge* and *Johnson,* is an inexcusable obstruction to the pursuit of justice. Such blatant abuse of prosecutorial power cannot be condoned. Technical arguments that discovery necessarily is limited before the preliminary examination to permit the matter to proceed promptly falls short of persuasion since the prosecutor's statements suggest that this policy applies, regardless of the stage of proceeding.

The problem cannot be cured by the fact that the prosecutor read the police report to defense counsel and was willing to let him see it in the courtroom. Having the report read to the attorney immediately arouses suspicion that the material is being edited or censored. Moreover, such brief exposure to the report, be it in the prosecutor's office or the courtroom, does not lend itself to the type of study, contemplation, and analysis that the

preparation of a criminal matter of this nature requires. Fundamental fairness requires full disclosure, which can be accomplished only by providing copies of the police report.

In *People v Walton,* 71 Mich App 478, 484; 247 NW2d 378 (1976), this Court addressed the broader issue of a defendant's right to full discovery. There, we held:

"First, fairness to the defendant and an adequate opportunity to prepare a defense, including preparation for cross-examination of witnesses, requires that the defendant be given access to all relevant information. It has been held that statements made by the defendant to the police are discoverable for that reason. *People v Johnson,* 356 Mich 619; 97 NW2d 739 (1959). Statements by the police officers have also been made available. *[People v Dellabonda,* 265 Mich 486; 251 NW 594 (1933).]* It goes without saying that statements made by other witnesses are equally important for trial preparation. This is particularly true, as in the case at bar, where the question of credibility may be preeminent. Any inconsistent or conflicting statements may have considerable impact upon the determination of the credibility of the parties and witnesses and may therefore be determinative of the outcome of this prosecution. Also, without an examination of the requested information, it is impossible to see if such information would be relevant and whether its suppression would lead to a failure of justice."

If the district court is to "search for the truth" it must have the authority to dismiss charges when the prosecution obstructs that search. The circuit court's writ of superintending control is quashed and the district court's dismissal is reinstated.