Commonwealth *v.* Foster, Appellant.

128

Submitted April 12, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Chris Vlachos,* Assistant Public Defender, for appellant.

*Jack H. France,* Assistant District Attorney, and *Jess D. Costa,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., June 22, 1971:

The appellant, James Foster, was charged with the crimes of armed robbery, pointing firearms, and carrying a concealed weapon arising out of the robbery of a supermarket in Donora, Pennsylvania on January 27, 1969. After trial before a judge and jury, Foster was found guilty on all three charges. He made motions for new trial and in arrest of judgment before the lower court and from the denial of these motions has appealed to our court. Several grounds for error have been assigned.

Appellant first claims that four witnesses who identified him as being one of the men who participated in the holdup had viewed him after the crime in improper lineups and other confrontations at the police station and at his preliminary hearing. He states that witnesses were brought to view him alone in his cell and that he had no counsel during these confrontations. While the identification evidence of these witnesses was not challenged in a pretrial motion to suppress, defendant's counsel argued at trial against the admission of identification testimony presented by the witnesses in question and later moved that such testimony be stricken from the record. The trial judge denied these motions. We believe his actions were proper.

The Supreme Court of the United States established guidelines for lineups and other pretrial confrontations in the cases of *U.S. v. Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 and *Gilbert v. California,* 388

U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178, both decided on June 12, 1967. In these cases, the Court pointed out that the relevant inquiry of the appellate court is whether the in-court identification was tainted by the improper out-of-court confrontations. Often, as was the situation in *Wade* and *Gilbert*, supra, a case may be remanded for further hearings in the lower court on this issue. This action is not necessary here. The lower court in the instant case made certain that there was an inquiry, on the record, directed to each witness concerning the exact basis of their identification of Foster at the time of trial. Each of the witnesses who provided identification testimony stated unequivocally that they were relying exclusively on their viewing of the defendant at the scene of the holdup in making their in-court identifications. They each stated that they had ample opportunity to see the men who perpetrated the crime, and that on that basis alone, they were sure that Foster was one of those men. Under the circumstances, we feel *Wade* and *Gilbert,* supra, have been satisfied.

Our review of the facts of the pretrial confrontations which occurred leads us to reject the further argument of appellant that they were so unnecessarily suggestive, and so conducive to irreparable mistaken identification, that there was a denial of due process. See *Stovall v. Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967). Four witnesses testified that they could identify Foster as having been one of the robbers. One of the witnesses, the head of the meat department in the market, did not see the defendant between the time of the robbery and the time of the trial. However, he was certain that Foster was a participant in the crime.

A second witness was a police officer who testified he was off duty and was a customer in the store at the

time of the robbery. He testified that the defendant pointed a gun at him and was close to him throughout the time of the robbery. He further stated that he had made a special effort to commit the robber's facial characteristics to memory so he could identify him later, if possible. The officer stated that his identification at trial was based entirely on his memory of defendant at the time of the crime. We find the witness credible because his occupation and training make it likely that he would be more observant and more aware of the importance of identification than the average person. The fact that the officer later saw the defendant in a cell in his own station house, in the course of his duties, in our opinion, would not lead to undue suggestion or irreparable mistaken identification.

The third witness to provide positive identification testimony was the cashier who gave the money to the robbers. She stated that based solely upon her sight of him the night of the crime she would never forget the face of the defendant. She did not see defendant at the jail, but did see him at the preliminary hearing and then briefly on a later date when the instant case was apparently scheduled and then postponed. Defendant has offered no reasoning to support an argument that these two meetings were so unduly suggestive as to lead to mistaken identification and this court finds no basis for assuming such a result. The cashier was emphatic in discounting any influence as a result of a photograph she saw of defendant in a newspaper after the crime. We have no reason for doubting her testimony in this regard.

The last witness, a stock boy in the store who saw the robbery, was taken by police to the jail to view the defendant alone in a cell a few days later. This type of confrontation is the kind that should be avoided. It is not necessary, however, in the instant case, to review

circumstances relating to the last witness's identification of Foster. Even if we completely discount the stock boy's testimony, we are left with a record which inescapably indicates guilt. Along with the testimony of the other three witnesses, the jury had evidence that defendant was involved in a collision after the robbery when police chased the car in which he was a passenger. After the accident, defendant, in attempting to escape, pointed a gun at police which was later identified as the same type used by the robbers. Defendant, apprehended at the scene of the accident after he was himself shot by police, had clothes on which matched those worn by one of the robbers. Other items in the wrecked car were later identified by the victims of the robbery as having been worn by the robbers. Therefore, even if this court accepts defendant's arguments of taint in relation to the stock boy's identification testimony, the combined effect of the other identification testimony, which we find untainted, and the rest of the evidence presented, conclusively points to Foster's participation in the crime.

At trial, at the end of all testimony, the defendant moved for dismissal of the charge of carrying a concealed weapon. The court refused this motion and the jury found defendant guilty of this charge. He was sentenced by the court to pay a fine and to serve a one to two year term for this violation.

Defendant claims there was no evidence to show that he had "secreted" the weapon on his person while out of view of witnesses. The Uniform Firearms Act (18 P.S. §4628) provides: "(e) No person shall carry a firearm *in any vehicle* or concealed on or about his person, . . . without a license therefor as hereinafter provided." [emphasis supplied]

Defendant produced no license for the gun, and even if he didn't carry it concealed on his person, there was

positive testimony that he emerged from the wrecked vehicle (immediately after the robbery) holding a pistol. We find that there was sufficient evidence presented to support the jury's verdict concerning the violation of the Uniform Firearms Act.

Defendant, at the outset of trial, demanded a jury investigation report which the district attorney's office had in its possession. Apparently, this report includes general information which is gathered pertaining to various members of the panel of jurors who are available for trials. This is a report which the District Attorney's Office pays for and which is used as an aid in the jury selection process by the attorneys from that office.

We feel that the report in question is definitely not subject to discovery in a criminal proceeding. Rule 310 of the Pennsylvania Rules of Criminal Procedure allows the criminal defendant to order the Commonwealth to disclose only defendant's own prior written statements or confessions. Also, under Rule 310, such applications must be made not less than five days prior to the scheduled date of trial. The record in this case reveals no such request prior to trial. Also, the defendant alleges no "exceptional circumstances or compelling reasons" in making his request, although such an allegation is required by the rule. Our courts have discussed the matter of pretrial discovery in criminal trials several times in the past and it is clear that such discovery is to be very strictly limited. See *Commonwealth v. Caplan*, 411 Pa. 563, 192 A. 2d 894 (1963).

Defendant raised other grounds of error which this court has reviewed, found to be without merit, and not calling for discussion herein.

Affirmed.