## PEOPLE *v.* SMEDLEY

1. ROBBERY—EVIDENCE OF OFFENSES NOT CHARGED—RES GESTAE.

   Evidence that defendant had committed narcotics offenses was properly admitted at his trial on a charge of armed robbery where the robbery was committed while defendant was trying to destroy the evidence of the narcotics offenses and where any possible prejudice caused by evidence of any crime other than the one charged was extinguished by an instruction to the jury (MCLA 768.27).

2. ROBBERY—ARMED ROBBERY—ESSENTIAL ELEMENTS.

   The essential elements of robbery armed are:  (1) an assault by the defendant upon the complainant, (2) a felonious taking of any property, which may be the subject of a larceny, from the complainant's person or in his presence, and (3) that the defendant was armed with a dangerous weapon (MCLA 750.529).

3. ROBBERY—ARMED ROBBERY—SUFFICIENCY OF EVIDENCE.

   The evidence was sufficient to justify a verdict of guilty of armed robbery even where the defendant contended that he did not know until after the taking had occurred that property would be taken from the complainant where the record shows that defendant held a gun on the complainant, that there was a felonious taking of property, and that defendant was aware of the taking and that the property was not returned.

4. CRIMINAL LAW—INSANITY—EXPERT WITNESS—WEIGHT.

   The trier of fact is not bound to accept the testimony of expert witnesses on the question of a criminal defendant's sanity but

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 321.
[2] 46 Am Jur, Robbery § 5 *et seq.*
[3] 46 Am Jur, Robbery § 50 *et seq.*
[4, 5] 21 Am Jur 2d, Criminal Law § 53 *et seq.*

is entitled to determine the question of sanity based on all the evidence introduced on that question.

5. CRIMINAL LAW—INSANITY—EVIDENCE—SUFFICIENCY.

Sufficient evidence was introduced at trial to support the jury's determination that defendant was sane at the time he committed the crime charged even where the defendant's expert witnesses testified that he was insane where the record shows that the defendant's expert witnesses' testimony was only based on short interviews with the defendant and where police officers testified that the defendant was intelligent, that he remained calm throughout the seven-hour period in which the crime was committed, and that he informed the officials that he had lied to the psychiatrists who were his expert witnesses at trial.

Appeal from Washtenaw, William F. Ager, Jr., J. Submitted Division 2 October 11, 1971, at Lansing. (Docket No. 9546.) Decided December 6, 1971.

King George Smedley was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *John B. Huss,* Assistant Prosecuting Attorney, for the people.

*Erwin A. Salisbury,* for defendant on appeal.

Before: McGREGOR, P. J., and HOLBROOK and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. The defendant was convicted by a jury of the crime of robbery armed, MCLA § 750.529 (Stat Ann 1971 Cum Supp § 28-.797), and sentenced to serve a period of 10 to 25 years in prison.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The events which led up to the commission of this crime began at about 10 p.m. on April 9, 1968, when Gary Lapides, an undercover police officer in the City of Ann Arbor, called at the defendant's apartment at 337 East Jefferson in Ann Arbor and purchased some narcotics. Lapides left immediately, returned to his own apartment, and enlisted the assistance of one Wendell Munn, his roommate and fellow officer. They returned to defendant's apartment and were able to gain admittance, only to be confronted by a pistol in the hands of the defendant.

Both officers were searched, and Munn was relieved of a revolver and a book which contained the names and addresses of narcotic pushers, users and other vital information. The people in the room, including the defendant, suspected that the two officers were narcotics agents and questioned them for some 45 minutes.

It was decided that the narcotics, sold by the defendant, would have to be retrieved. Thereupon, a plan was entered into by defendant and the others, whereby Officer Lapides would be escorted to his apartment while Munn would be held as a captive until they returned with the goods. It was the understanding that, if Lapides and his escort did not return within 45 minutes, Munn would be killed. Fortunately, they were able to complete the mission within the allotted time.

The room was cleared of narcotics at the suggestion of the defendant; however, in the meantime, a wallet containing $32 was taken from Lapides. Neither the wallet nor the money was returned to the owner.

There was some discussion about killing the officers; however, the defendant decided that as long as they had no evidence about narcotics, it would be safe to let them go.

When the officers were about to be released, Lapides was asked if he had everything. He replied that he did not have his wallet. At this point defendant thrust the pistol towards the officer and said, "What?" Lapides replied "never mind" and left the apartment with Munn, in order to secure other assistance.

The defendant was charged with two counts of kidnapping and two counts of armed robbery. Prior to trial, the defendant filed notice of the defense of insanity, MCLA § 768.20 (Stat Ann 1954 Rev § 28.1043). A sanity hearing was ordered by the trial judge and the defendant was adjudged to be incompetent to stand trial. He was committed to the Center for Forensic Psychiatry at Ionia State Hospital for psychiatric evaluation. On January 14, 1970, the trial court found the defendant was then mentally competent and able to stand trial. At the trial, defendant not only denied committing the charged crime, but also raised the defense of insanity.

I. *Did the trial court err in admitting testimony which would tend to indicate that the defendant had committed crimes other than the one charged?*

MCLA § 768.27 (Stat Ann 1954 Rev § 28.1050) provides:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved,

whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

Michigan law is replete with cases that have attempted to interpret exactly what this statute intends; that is, exactly how much latitude the trial court may, in its discretion, allow in the testimony of witnesses as to other crimes committed by the defendant. In *People* v. *Seaman* (1895), 107 Mich 348, 358, 359, the Court propounded what has become the classic statement of what other crimes may be testified to to show a felonious intent:

"It is clear that where a felonious intent is an essential ingredient of the crime charged, and the act done is claimed to have been innocently or accidentally done, or by mistake, or when the result is claimed to have followed an act lawfully done for a legitimate purpose, or where there is room for such an inference, it is proper to characterize the act by proof of other like acts producing the same result, as tending to show guilty knowledge, and the intent or purpose with which the particular act was done, and to rebut the presumption that might otherwise obtain."

Further interpretations by the Court have been in the same vein. In *People* v. *Savage* (1923), 225 Mich 84, 86, the Court said:

"It is elementary that the acts, conduct and demeanor of a person charged with a crime at the time of, or shortly before or after the offense is claimed to have been committed, may be shown as a part of the *res gestae*. Proof of such acts is not rendered inadmissible by the fact that they may tend to show the commission of another crime."

The trial judge, in his discretion, should find the evidence to be relevant and that its probative value

outweighs its potential prejudicial effect to the defendant. If such a finding is made, the evidence is admissible. *People* v. *Shaw* (1968), 9 Mich App 558; *People* v. *Flansburgh* (1970), 24 Mich App 470; *People* v. *Burton* (1970), 28 Mich App 253; *People* v. *Kowatch* (1932), 258 Mich 630; *People* v. *Andriacci* (1968), 11 Mich App 482; *People* v. *Henderson* (1970), 25 Mich App 28; and *People* v. *McClure* (1971), 29 Mich App 361.

An examination of the trial transcript, in light of the above authorities, indicates that the other crimes testified to by the officers would clearly fall within the *res gestae*.

Only one item might border upon error; that is the reference in five or six lines to the narcotics. However, any possible prejudice, not only by this evidence, but the other crimes as well, was extinguished by the excellent charge of the trial judge:

"There has been some testimony that might lead the jury to believe that the defendant has committed some other offenses, some other types of offense. The court would instruct you now that you are to disregard any testimony of this nature so far as it might tend to show that the defendant did or did not commit the offense with which he is charged. He is only being charged in this case with armed robbery. So, this is only up to the jury to determine whether he is guilty or not guilty, or not guilty by reason of insanity of armed robbery. The mere fact that some evidence, some other possible offense might have been introduced, does not mean that you can take that into account in determining whether the defendant is guilty of this offense, the offense which he is charged with, the offense of armed robbery."

II. *Did the evidence prove beyond a reasonable
doubt that the defendant possessed the
necessary intent to commit
robbery armed?*

The law is well settled that one who "procures,
counsels, aids or abets" in the commission of a crime
may be prosecuted as a principal.   MCLA § 767.39
(Stat Ann 1954 Rev § 28.979); *People* v. *Smith*
(1935), 271 Mich 553; *People* v. *Miniear* (1967), 8
Mich App 591.

The essential elements of robbery armed as set
forth in the statute, MCLA § 750.529 (Stat Ann 1971
Cum Supp § 28.797), are: (1) An assault by the
defendant upon the complainant; (2) a felonious
taking of any property, which may be the subject
of a larceny, from complainant's person or in his
presence; and (3) that the defendant was armed
with a dangerous weapon.

The defendant insists that he did not know that
the wallet would be taken away and not returned.
This argument, as to the lack of intent, is without
merit.   He held a gun on the officers, which would
constitute an assault; there was a felonious taking
of the property; and defendant was aware of the
fact that the wallet and money had not been re-
turned.

A review of the record indicates that all of the
necessary elements were present, and that proper
instructions concerning the same were given to the
jury by the trial judge.   Accordingly, the jury was
justified in finding the defendant guilty of such an
offense.   *People* v. *Poplar* (1969), 20 Mich App 132;
*People* v. *Lloyd* (1967), 5 Mich App 717; *People* v.
*Arither Thomas* (1967), 7 Mich App 103.

### III. *Was the question of sanity properly submitted to the jury?*

For a clear understanding of this issue, it is necessary to place the facts in the proper perspective.

The episode ran from 10 p.m. until 5:15 in the morning. During this time, the defendant sold certain narcotics to Officer Lapides, only to learn later that he was a policeman. He knew that, upon conviction for the narcotics sale, he faced a prison term of at least 20 years and that it might be better to face a murder charge. Thereafter, he planned a course of action not only to rid the apartment of such evidence, but also to retrieve that which had been purchased.

According to the officers, the defendant, a highly intelligent student, remained calm during the entire period.

For the trial, defendant solicited the services of Dr. Orris R. Yoder, a highly respected psychiatrist with 48 years of experience, who visited with him for 1-1/2 hours on 2 occasions and concluded that the defendant was insane on the said date. This opinion was concurred in by Dr. Stavros Papathanassiou, who had worked as a staff psychiatrist for different hospitals.

The people presented no experts, but relied on the evidence furnished by the officers and the testimony of Detective Fitzgerald that the defendant had admitted to him and others that he had done a good "snow job" on the doctors.

The law is well settled that a defendant is presumptively sane, but that once evidence is introduced of insanity, the burden of proof is on the prosecution to establish his sanity beyond a reasonable doubt. *People* v. *Eggleston* (1915), 186 Mich 510;

*People* v. *Krugman* (1966), 377 Mich 559; *People* v. *Woody* (1968), 380 Mich 332.

An excellent definition of mental illness was recently promulgated by this Court in *Dayiantis* v. *Blackhawk Inc.* (1971), 33 Mich App 201, 203:

"A mentally incompetent person is one who is so affected mentally as to be deprived of sane and normal action, or who lacks sufficient capacity to understand in a reasonable manner the nature and effect of the act he is performing. See *In re Johnson's Estate* (1938), 286 Mich 213; *Hillman* v. *Huitt* (1929), 249 Mich 1."

The prosecution in this case relies heavily on *People* v. *English* (1970), 29 Mich App 36, 49, wherein it was held:

"Based on our analysis of the pertinent Michigan cases, we are of the opinion that when the defendant's sanity is an issue it is not always necessary for the people to introduce affirmative testimony that the defendant was sane in order to make out a case for the jury."

The *English* Court continued on page 51:

"Triers of fact are not bound to accept opinion testimony, however expert and authoritative, because opinion testimony is not of the highest order. *Vial* v. *Vial* (1963), 369 Mich 534. If, under all the testimony in this case, the jury was compelled to accept questionable opinions of fact, then the doctors, not the jury, would have been determining the facts. We do not think the law of Michigan requires such a result, nor do we think that it should require such a result."

It must be remembered that the opinions expressed by the experts were based only upon short interviews with the defendant and were not based on an independent assessment of the facts. As

stated in *English,* the jury was not bound to accept these opinions, but rather, was entitled to determine the true situation after a review of all the facts.

Further, what we have here is a cunning, intelligent individual, who knew what his defense was going to be. Therefore, his statement concerning the "snow job" takes on added significance.

This was admitted by Dr. Yoder in the following testimony given on cross-examination:

"*Q.* Now, I'm going to ask you a hard question, Doctor, and I realize it is difficult. Is there any chance Mr. Smedley could have been lying to you on July 11, 1968, about anything?"

"*A.* Yes, there is always that chance, always a chance of bluffing. That's something which the examiner must determine based on his experience and the reaction. Sure, there's a chance in the course of your work, you would rather acquire a certain ability to evaluate who's malingering, who is telling the truth, who isn't telling the truth, but it is an opinion."

We hold that the jury, as in *English,* having before it all of the facts, including the expert opinions, was the ultimate judge of the defendant's sanity at the time that the crime was committed. This case was fairly presented to that body, and we see no reason for disturbing its findings.

Affirmed.

All concurred.