PEOPLE v ALDRIDGE

OPINION OF THE COURT

1. BURGLARY—EVIDENCE—OFFENSES NOT CHARGED—RES GESTAE.

Evidence that defendant had carried a concealed weapon was properly admitted at his trial on a charge of breaking and entering where the discovery of the weapon, taken from the place entered, on defendant's person at the scene of the crime was necessary to establish the larcenous intent element of the offense charged, where the testimony was admissible as part of the res gestae notwithstanding its tendency to show the commission of another crime, and where any prejudice caused by the admission of this evidence was appropriately cured by the trial judge's instruction to the jury (MCLA 750.110, 750.227).

2. CRIMINAL LAW—FAIR TRIAL—PROSECUTOR'S DUTY.

A prosecutor has a duty to insure the fairness with which criminal trials are conducted by not interposing obstacles to the disclosure of the facts.

3. CRIMINAL LAW—DOSSIER ON JURORS—DISCOVERY.

Disclosure of a dossier upon prospective jurors in the possession of the prosecutor must be made to a defendant upon his request.

4. CRIMINAL LAW—DOSSIER ON JURORS—DISCOVERY.

The right of a defendant to have disclosed to him a dossier on prospective jurors in the possession of the prosecutor is neither exclusive nor absolute; fairness requires that defendants may not seek disclosure of a prosecutor's dossier while preserving the secrecy of their own investigative reports on prospective jurors, and if a prosecutor believes his file regarding the jurors contains the impressions, theories, or projections of his staff, he can request nondisclosure as afforded by the "work product" doctrine.

REFERENCES FOR POINTS IN HEADNOTES

[1] 13 Am Jur 2d, Burglary §§ 24, 41, 52, 69, 73.
[2] 63 Am Jur 2d, Prosecuting Attorneys § 27.
[3–6] 21 Am Jur 2d, Criminal Law § 330.

5. CRIMINAL LAW—DOSSIER ON JURORS—DISCOVERY—APPEAL AND ER-
ROR.

Failure of a trial judge to grant a defendant's request for disclo-
sure of a dossier on prospective jurors in the possession of the
prosecutor did not require a reversal of defendant's conviction
but rather necessitated further proceedings to determine
whether defendant was denied a fair trial in that the prosecu-
tor's dossier may have contained information regarding the
jurors upon which challenges for cause could have been based.

CONCURRENCE IN PART, DISSENT IN PART BY DANHOF, P. J.

6. CRIMINAL LAW—DOSSIER ON JURORS—DISCOVERY—CONSTITUTIONAL
LAW.

*A rule of discovery requiring disclosure of a dossier on prospec-
tive jurors in possession of a prosecutor should be made uni-
form in its application by a rule promulgated by the Supreme
Court; imposition of such a rule by the Court of Appeals would
lead to piecemeal application by trial courts and confusion in
the criminal law (Const 1963, art 6, § 5).*

Appeal from Ingham, Marvin J. Salmon, J. Sub-
mitted Division 2 October 11, 1972, at Lansing.
(Docket No. 12524.) Decided June 25, 1973.

William H. Aldridge was convicted of breaking
and entering. Defendant appeals. Remanded with
instructions for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Raymond L. Scodel-
ler,* Prosecuting Attorney, and *James R. Ramsey,*
Assistant Prosecuting Attorney, for the people.

*H. Eugene Bennett,* for defendant.

Before: DANHOF, P. J., and BRONSON and T. M.
BURNS, JJ.

BRONSON, J. Defendant was convicted by jury
verdict of breaking and entering in violation of
MCLA 750.110; MSA 28.305. From the trial court's

sentence of 2-1/2 to 15 years, defendant appeals as a matter of right. The facts precipitating defendant's conviction may be briefly summarized as follows.

On the afternoon of December 21, 1970, Frankie Scott locked the windows and doors of his house prior to leaving for work as was his customary practice. He also checked to see whether his pistol and holster were in their usual location between the mattress and springs. Upon returning from work at 11:45 p.m., Scott was told that someone was running out of his house by Michael Leeks, a neighbor. Scott found his back door open and observed two men running out the front door. He began chasing these men and ultimately caught one during the pursuit. Scott's captive, subsequently identified as defendant, was turned over to police officers responding to the reported crime. The officers frisked defendant and found a pistol and holster in his right rear pocket. The pistol and holster were identified as those Scott kept between his mattress and springs. Defendant was arrested for carrying a concealed weapon[1] and subsequently indicted for breaking and entering.

The two issues raised for our consideration are based upon alleged errors committed during defendant's trial upon the breaking and entering offense. Immediately after the selection of the jury, defense counsel requested the disclosure of the prosecution's dossier of the impaneled jury. This disclosure motion was based upon defense counsel's understanding that the dossier existed, was collected by police agencies in the immediate area, and possibly contained (1) information regarding the jurors' and their families' adverse contact with the law and (2) information of whether the jurors

_____
[1] MCLA 750.227; MSA 28.424.

were prosecution minded. Defense counsel offered to supply proofs on this matter, but the trial judge denied his motion without specifying the reason therefor. It is this denial of requested discovery which raises the primary issue for our consideration.

During the trial the prosecution offered the testimony of William Martin, the arresting police officer, as part of its case in chief. This officer described the information received upon arriving at the scene of the crime and the search of defendant, a suspected participant. In response to the question, "What did you do after making the search of the defendant?", this witness stated, "First I placed him under arrest for C. C. W., carrying a concealed weapon; then I put him in the car". Defendant moved for a mistrial since this testimony interjected the commission of another offense for which defendant was not on trial.[2] The trial judge denied the motion, finding the error harmless and stating that he would give the appropriate cautionary instruction. This testimony and ruling raises the second issue for our consideration:

I. *Did the introduction of testimony regarding a separate charge into the trial record constitute reversible error?*

We consider the second issue first, finding it devoid of merit. The challenged testimony referred to defendant's arrest for an independent offense for which he was not being tried. The issue created by the admission of this type of evidence was considered by this Court in *People v Smedley,* 37 Mich App, 325, 329 (1971). The *Smedley* panel

---

[2] An indictment for the concealed weapons offense was pending and its trial was scheduled to follow the one for breaking and entering.

disposed of the issue by quoting the following language from *People v Savage,* 225 Mich 84, 86 (1923):

"It is elementary that the acts, conduct and demeanor of a person charged with a crime at the time of, or shortly before or after the offense is claimed to have been committed, may be shown as a part of the *res gestae.* Proof of such acts is not rendered inadmissible by the fact that they may tend to show the commission of another crime."

The present testimony regarding the discovery of the pistol and holster on defendant's person at the scene of the crime was necessary to establish the larcenous intent element of the offense charged. Similarly, this testimony was admissible as part of the res gestae notwithstanding its tendency to show the commission of another crime. The incidental degree of prejudice caused by the admission of this evidence was appropriately cured by the trial judge's cautionary instruction that the jury disregard any references to other crimes in their deliberation as to defendant's guilt or innocence of the crime charged. In this context, the trial judge properly denied defendant's motion for mistrial.

II. *Did the trial judge's denial of defendant's requested discovery of the prosecution's dossier upon the impaneled jury prepared by police agencies constitute reversible error?*

The type of disclosure requested by defendant below creates a question of first impression for this jurisdiction. The implicit discovery problem raised challenges our thinking upon what is reasonable, fair, and just. Our evaluation is founded upon the concept of fundamental fairness rather than upon

the current underpinnings of criminal discovery. We draw upon the area of criminal discovery for guidance because of its effect and interrelationship with the problem raised, but do not treat it as one requiring an interpretation or extension of current rules governing the disclosure of *evidence valuable to defendant.* With this preface, we proceed to delineate the basis for our holding that disclosure of the prosecutor's dossier upon prospective jurors must be made to defendant upon request.

We recognize that discovery in a criminal trial is a rapidly developing area of the law. The extent to which defendants are permitted to discover particular items depends upon the rules employed, state or Federal, and the jurisdiction selected for review. But this much may be gleaned from the developing case law—there is a trend favoring the expansion of criminal discovery.[3] This trend is no less apparent in Michigan.[4] Unlike many jurisdictions, Michigan's progressive attitude toward criminal discovery had an early impetus. In *People v Dellabonda,* 265 Mich 486 (1933), the Court held that a defendant had a right to inspect a witness police officer's report written in the regular course of his duty and immediately forwarded to his supervisor. Although the disclosure sought was

---

[3] *See, e. g., Dennis v United States,* 384 US 855, 870; 86 S Ct 1840, 1849; 16 L Ed 2d 973, 984 (1966), in which the Court stated:

"These developments are entirely consonant with the growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice."

*See, also,* Anno, 5 ALR3d 819; Anno, 7 ALR3d 8; Anno, 7 ALR3d 181; Anno, 20 ALR3d 7.

[4] Recently, the Michigan Supreme Court in *People v Wimberly,* 384 Mich 62, 65 (1970), stated:

"[W]e observe the emergent trent toward the broadest form of discovery in both criminal and civil trials and the prosecutor's duty to produce at trial *all* the evidence relevant to the defendant's guilt or innocence."

justified by a finding that such was necessary to defendant's exercise of his right to impeach a witness, the Court referred to several concepts relevant to the present issue. The *Dellabonda* Court stated:

"The only legitimate object of the prosecution is to show the whole transaction as it was, whether its tendency is to establish the guilt or innocence of the accused. *Hurd v People,* 25 Mich 405 [1872]; *People v Etter,* 81 Mich 570 [1890]. *A public prosecutor has no right to suppress testimony. Wellar v People,* 30 Mich 16 [1874]. It is the duty of the prosecuting attorney to furnish all the evidence within his power bearing upon the issue of guilt or innocence in relation to the main issue or to give some good excuse for not doing so. *People v Swetland,* 77 Mich 53 [1889]; *People v Germaine,* 101 Mich 485 [1894]."[5] At pp 500–501. (Emphasis added.)

\* \* \*

"As said in *People v Davis,* 52 Mich 569 [573–574 (1884)]:

" '*The State has no interest in interposing any obstacle to the disclosure of the facts,* unless it is interested in convicting accused parties on the testimony of untrustworthy persons. But surely the State has no such interest; its interest is that accused parties shall be acquitted unless upon all the facts they are seen to be guilty; and if there shall be in the possession of any of its officers information that can legitimately tend to overthrow the case made for the prosecution, or to show that it is unworthy of credence, the defense should be given the benefit of it. There was, therefore, no privilege to preclude the giving of the testimony for which the defense called.' " At p 504. (Emphasis added.)

Significantly, this language recognizes the prosecution's duty to insure the fairness with which trials are conducted by not interposing obstacles to the disclosure of the facts.

---

[5] This language was cited with approval in *People v Wimberly,* *supra,* p 66.

The criminal trial encompasses a purpose which must not be obfuscated by the adversary climate in which it is conducted. The Court in *People v Johnson,* 356 Mich 619, 621 (1959), described this purpose by stating that:

"The legal concept of a criminal trial has changed considerably in modern times. It is seen less as an arena where two lawyer gladiators duel with the accused's fate hanging on the outcome and more as an inquiry primarily directed toward the *fair ascertainment of the truth.'*[6] (Emphasis added.)

The prosecutor's office, as the people's representative, insures the fairness within our system of justice by seeking the ascertainment of truth as a goal in addition to its adversary function. In *People v Jordan,* 23 Mich App 375, 387 (1970), this Court quoted the following language from *Hurd v People,* 25 Mich 405, 416 (1872): "The prosecuting officer represents the public interest, which can never be promoted by the conviction of the innocent". These principles were adhered to by the Court in *People v Wimberly,* 384 Mich 62, 69 (1970), which held that *"prior to trial* the trial judge possesses the discretion *in the interests of a fair trial* to release any and all of the grand jury testimony relevant to the guilt or innocence of the defendant to the crime charged".[7] (Second emphasis added.) While recognizing that the cited cases are factually distinguishable as involving the disclosure of evidence valuable to defendant, their pronouncements envisage the fundamental fairness indispensable to our judicial system.

Our reliance upon the concept of fundamental

---

[6] *Accord, People v Jordan,* 23 Mich App 375, 387 (1970).

[7] *See, also, People v Bellanca,* 386 Mich 708 (1972), in which the Court extended criminal discovery to include the testimony of grand jury witnesses.

fairness in the area of disclosure is supported by the Court's statement in *Roviaro v United States,* 353 US 53, 60; 77 S Ct 623, 628; 1 L Ed 2d 639, 645 (1957), that "[a] further limitation on the applicability of the [informer's] privilege arises from the *fundamental requirements of fairness"*. (Emphasis added.) Similarly, the United States Supreme Court in *Brady v Maryland,* 373 US 83, 87; 83 S Ct 1194, 1197; 10 L Ed 2d 215, 218 (1963), stated that "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly". The principle of fairness provides the vehicle for our disposition of defendant's requested disclosure of the prosecution's dossier upon the impaneled jury.

In *Commonwealth v Smith,* 350 Mass 600; 215 NE2d 897 (1966), the court was confronted with a defendant's request to examine before trial the prosecution's investigative reports upon prospective jurors. The trial judge denied defendant's motion but examined the jurors to determine whether they were prejudiced by police investigations conducted at the prosecutor's request. The *Smith* Court upheld the trial judge's rejection of defendant's argument that prejudice must be presumed. Significantly, this Court proceeded to recognize the propriety of the requested discovery by stating:

"We believe, nevertheless, that the practice of using police officers to gather appropriate information about prospective jurors should be subject to the general supervision of the trial court and that *the information obtained should be as available to the defendant as to the district attorney.* * * * The public interest in assuring the defendant a fair trial is, we think, equal to the public interest in assuring such a trial to the Commonwealth. The police, as agents of the public, should not,

for such an investigatory purpose, be available for only one side in the pending contest." 350 Mass at pp 603–604; 215 NE2d at p 901. (Emphasis added.)

The propriety in furnishing defendant with prosecutor's records regarding prospective jurors was sustained in *Losavio v Mayber,* — Colo —; 496 P2d 1032 (1972). There the public defender's office sought the inspection of police arrest and conviction records of prospective jurors upon the basis that such were discoverable as public records. The *Losavio* Court affirmed the trial judge's finding that the requested records were not subject to disclosure to the public at large but stated:

"However, as we view the request of the petitioners, they *were seeking no more from these records than what was provided to the district attorney.* As thus framed, *the request of the petitioners is eminently reasonable, just and fair.* In our view, the reasons advanced for denying these annotated lists of prospective jurors to the public defender's office, or, for that matter, to any defense attorney, are completely devoid of merit." — Colo at p —; 496 P2d at p 1034. (Emphasis added.)

The *Losavio* Court held that defendant was entitled to disclosure of these records routinely provided the prosecutor by the police department since "[t]he requirements of fundamental fairness and justice dictates no less". — Colo at p —; 496 P2d at 1035.

Although other jurisdictions have adopted a contrary position,[8] we think the *Smith* and *Losavio* cases represent a better approach which is consist-

[8] *See, e.g.,* Anno, 78 ALR2d 309; *People v Quicke,* 71 Cal 2d 502; 455 P2d 787; 78 Cal Rptr 683 (1969); *People v Brawley,* 1 Cal 3d 277; 461 P2d 361; 82 Cal Rptr 161 (1969); *United States v Falange,* 426 F2d 930 (CA 2, 1970), *cert den,* 400 US 906; 91 S Ct 149; 27 L Ed 2d 144 (1970); *Commonwealth v Foster,* 219 Pa Super 127; 280 A2d 602 (1971).

ent with the trend toward liberal discovery. The Court in *People v Dellabonda, supra,* posed the same question which we find troublesome: "Why was not defendant entitled to this?" At p 504. The reports sought to be discovered in the present case were allegedly collected by local police agencies and currently in the possession of the prosecutor. After carefully reviewing the arguments advanced in opposition to liberal discovery,[9] we are unpersuaded that a rational basis exists for treating defendant unequally and denying the requested disclosure. Our sense of fundamental fairness requires placing defendant upon an equal footing by requiring disclosure of the prosecutor's investigatory report upon prospective jurors. Since jurors are so important to our system of criminal justice, nondisclosure of information upon which defendant may exercise peremptory challenges places a premium upon "gamesmanship" to the subversion of the trial's search for truth.

This right of disclosure is not the exclusive property of the defendant. It is not our intention to create a one-way street for the benefit of defendant and his counsel. The people by its representative—the prosecutor—are entitled to equality in treatment. The doctrine of fairness does not mean that defendants are permitted to seek disclosure of the prosecutor's dossier while preserving the secrecy of their own investigative report upon prospective jurors.

Neither can we say that this right of disclosure is absolute. One argument advanced for denying modern discovery provides a meritorious limitation upon the requested discovery. We recognized that a prosecutor's dossier may contain information

[9] *Compare State v Tune,* 13 NJ 203; 98 A2d 881 (1953), *with* Brennan, *The Criminal Prosecution: Sporting Event or Quest for Truth?,* 1963 Wash U L Q 279.

falling within the "work product" doctrine. The ABA Standards Relating to Discovery Before Trial recognizes this doctrine and defines it as follows:

"(a) *Work Product.* Disclosure shall not be required of legal research or of records, correspondence, reports or memoranda to the extent that they contain the *opinions, theories* or *conclusions* of the prosecuting attorney or members of his legal staff."[10] (Emphasis added.)

This position in which "work product" extends only to the opinions, theories, or conclusions of the prosecutor's office fulfills the intended purpose of the doctrine by protecting the thought processes of the prosecutor or his staff. The protection afforded the prosecutor's thought processes is no less applicable to defendant and he may invoke the doctrine in the appropriate case. The "work product" doctrine cannot be invoked to deny disclosure of the type of investigatory report containing the compilation of facts sought in the instant case.[11] If the prosecutor believes his file regarding the jurors contains the impressions, theories, or projections of his staff, he can seek the protection afforded by requesting an *in camera* inspection by the trial judge.[12] With this limitation, we hold that defendant has a right to discover the prosecutor's dossier regarding prospective jurors upon request. The trial judge's failure to recognize this right does not

[10] ABA Project on Standards for Criminal Justice: Standards Relating to Discovery and Procedures Before Trial, Standard 2.6 (Approved Draft, 1970).

[11] *Id.,* Commentary, pp 90, 91. *Cf., Losavio v Mayber,* — Colo —; 496 P2d 1032 (1972).

[12] An *in camera* inspection is currently recognized as an appropriate vehicle for protecting the parties' respective rights vis-a-vis discovery. *See, e.g., People v Wimberly, supra; People v Bellanca, supra; People v Marra,* 27 Mich App 1 (1970); *Dennis v United States, supra; United States v Eley,* 335 F Supp 353 (ND Ga, 1972); ABA Project on Standards for Criminal Justice; Standards Relating to Discovery and Procedures Before Trial, Standard 4.6 (Approved Draft, 1970).

require a reversal of defendant's conviction upon the present facts since a determination of whether defendant was denied a fair trial necessitates further proceedings.

The disclosure of jury dossiers fulfills two important functions by providing information (1) vital to the beneficial exercise of peremptory challenges, and (2) upon which challenges for cause can be based. Defendant ignored the potential value of such disclosure vis-a-vis peremptory challenges with his belated request. Although defendant had knowledge of the existence of the prosecutor's dossier one hour before trial, he waited until his peremptory challenges had been exhausted and the jury chosen to give notice of his request. This timing may well have been a tactical decision since one of the reasons defendant offered for his request was to obtain additional peremptory challenges. Discovery for this purpose is unavailing since the number of such challenges is statutorily governed.[13] In this context, defendant was not prejudiced with respect to the exercise of his peremptory challenges by the trial judge's denial of disclosure.

We reach a contrary conclusion with respect to the second purpose fulfilled by the requested disclosure. The prosecutor's dossier may have contained information upon which challenges for cause could be based. The trial judge's ruling foreclosed this important determination to defendant's detriment. We, therefore, direct that disclosure be made and remand for the appropriate determination by the trial judge. If the trial judge finds that the dossier contains information justifying a challenge for cause, defendant's conviction shall be reversed and a new trial granted. If the

---

[13] *See* MCLA 768.12; MSA 28.1035 and MCLA 768.13; MSA 28.1036.

trial judge finds no information justifying a challenge for cause, defendant's conviction shall be affirmed and a new trial denied.

Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

T. M. Burns, J., concurred.

Danhof, P. J. *(concurring in part and dissenting in part).* I concur with the result reached by the majority in holding that the testimony regarding the defendant's arrest which showed an independent offense was part of the res gestae of the instant case and hence was admissible.

I must dissent, however, from the decision remanding this matter to the trial judge for examination of the dossiers prepared by the prosecutor on prospective jurors. It appears to me that under the guise of fundamental fairness the majority seeks to impose as substantive law a rule of discovery in criminal cases. If what the majority seeks to accomplish is to become the law of this state, it should be made uniform in its application by a rule promulgated by the Supreme Court under Const 1963, art 6, § 5. To do otherwise would lead to piecemeal application by the trial courts and confusion in the criminal practice in this state.

As a matter of substantive law I agree with the opinion of *United States v Falange,* 426 F2d 930, 932–933 (CA 2, 1970), wherein the Court stated:

"An investigation of prospective jurors pointedly directed toward uncovering possible bias against the government was made in *United States v Costello,* 255 F2d 876, 882 (2d Cir), cert den 357 US 937, 78 S Ct 1385, 2 L Ed 2d 1551, reh den, 358 US 858, 79 S Ct 16, 3 L Ed 2d 93 (1958). That was a case of a prosecution for income tax evasion, where an examination was made by the government of the income tax returns of many mem-

bers of the jury panel 'in an effort to find out whether [they] had income tax troubles of their own or had other reasons to be unfavorably disposed to the Government.' *Id.* at 255 F2d 882. We held in *Costello* that the investigation furnished.

" 'utterly no basis for the contention that it resulted in a jury "specially conditioned" to convict or otherwise biased or prejudiced against the defendant. At most, the practice led to challenges of jurors who might have been unduly biased in favor of the defendant. The exercise of peremptory challenges is a rejective, rather than a selective, process of which the appellant has no right to complain.' *Id.* at 884.

"The fact that some members of the panel were challenged does not mean that those who were not were biased or prejudiced.

"The defendants' arguments that to permit such an investigation of prospective jurors as occurred here will discourage citizens from serving as jurors were dismissed in *Costello* as 'far fetched bogies.' *Id.* at 883. The additional contention that it is fundamentally unfair to deprive defendants of a similar opportunity was rejected in *Best v United States,* 184 F2d 131, 141 (1st Cir 1950), cert den, 340 US 939, 71 S Ct 480, 95 L Ed 677 (1951), where Chief Judge Magruder upheld the denial of a defendant's motion to be allowed to inspect and use an FBI report of its investigation of the veniremen. See also, *Martin v United States,* 266 F2d 97, 99 (5th Cir 1959); *Christoffel v United States,* 84 US App DC 132, 171 F2d 1004, 1006 (1948), rev'd on other grounds, 338 US 84, 69 S Ct 1447, 93 L Ed 1826 (1949).

"We conclude that the denial of the motion to withdraw the jury was not an abuse of discretion."

I would affirm.