## Commonwealth v. Ringer

*Joseph J. Nelson*, District Attorney, for Commonwealth.

*Francis Fornelli, Anthony DeCello, Herman Rodgers, Timothy McNickle* and *Mercer County Public Defender's Office*, for defendants.

ACKER, J., September 27, 1973.—These cases,

which bring difficult problems of disclosure, are but part of 67 which stand or fall upon the testimony of one witness, Francis Flack. The vast majority arise from drug sales with possession being the exception. None has as yet been tried by court or jury, although several defendants have pleaded guilty. Seven of the cases are in Juvenile Court. Most unusual circumstances bring them before this court. Defendants' requests are to be furnished all evidence favorable to defendants. This could be results of State Police and Department of Justice investigations, disclosures from agent's personal diary and psychological and psychiatric studies of the witness, Francis Flack.[1]

The starting point is Pennsylvania Rule of Criminal Procedure 310 which denies such disclosures unless "upon proof by the defendant, after hearing, of exceptional circumstances and compelling reasons." It is concluded that both exist which require disclosure. The extent is the issue.

Francis Flack, a 19-year-old high school graduate working for a clothier in the Shenango Valley area and attending an off-campus college, elected to become an "undercover agent" for the Farrell Police Department. He officially started February 28, 1973, when sworn in by the Farrell mayor. Actually, he had been traveling in the circle of persons who were subsequently arrested and charged for some period before. He was, therefore, a local person known from school or other association long before any "buys." He operated "undercover" for about three months. On May 24, 1973, while in a bar in Ohio with some of his peers

---

[1] All cases were stayed pending the outcome of this matter. One defendant convicted of burglary of a doctor's office waived any benefits he might receive from the investigation and was sentenced for delivery of a drug and burglary.

from whom he had already purchased, he was accused of being a "Narc." With some help, he fled and his "cover was blown." A large "raid" followed with many arrests resulting in the 67 cases now filed.

Flack continued in the employ of the Farrell police[2] until August 31, 1973, when he resigned by letter "due to personal reasons." He added, "I, do further wish that all person I, have busted for sale of Drugs Be set-free and all charges be withdrawn at once. Everyone."

The next several days witnessed frenzied activity by the unit to attempt to locate Flack for testimony in 10 cases to actually go to the grand jury and 27 listed for petit jury trial the following week. The witness reappeared on Tuesday, September 4th, and gave a statement, part of which was taped, in the Sharpsville Borough Building in the presence of Joseph Nelson, District Attorney of Mercer County, and others. There, Flack made certain accusations of misconduct of the unit, including wiretapping.

On September 5, 1973, Frances Palmer, then an assistant district attorney and a legal advisor of the unit, presented to a district magistrate an affidavit under Pa. R. Crim. P. 4014[3] requesting Flack be detained in that he alleged that he would not testify and had been absent from the jurisdiction.[4] Bail was set at $100,000, with leave to immediately appear before this court for reduction. Exercising that right, the wit-

---

[2] Known originally as the Farrell Narcotics Unit but upon Sharon joining it became Shenango Valley Narcotics Unit. Herein it shall be referred to as the unit.

[3] Pennsylvania Rule of Criminal Procedure 4014 permits detaining a material witness and the posting of bond for appearance.

[4] The unit also obtained a search warrant for Flack's safe deposit box in an effort to obtain his notes, memorandums, records or writings as well as money, savings account passbooks and certificates of deposit. The results were negative.

ness did appear. After hearing, because of allegations of defendant that he had at one time been shot at and that he feared for his safety from various directions, he was committed at about 11 a.m. to a cleared section of the Mercer County Jail. There, contact between accused and accuser was impossible. Shortly after lunch of that same day, at the request of the State Police, he was released into the custody of Trooper Richard McEwen to produce the witness to testify at grand jury on Monday, September 10, 1973. By further order a day later, he was transferred into the custody of Chief Thomas Weldon and permitted to reside with his grandparents in Sharpsville. He appeared as required and did testify for the Commonwealth in 10 cases on September 10, 1973. On September 6, 1973, Frances S. Palmer resigned as an assistant district attorney.

Upon this court hearing of Miss Palmer's resignation and of alleged wiretapping by the unit, the immediate concern was whether any of the "Flack cases" were in any way tainted by such activities.

With the trials but a week away, the district attorney's office was directed to inform by telephone all of the attorneys who had cases which were to commence the following week, followed by written notice, that it had come to the court's attention wiretapping may have occurred, but Flack alleged none of the cases he was concerned with was so involved. The following day, all counsel for all cases scheduled for trial appeared with numerous oral motions heard in open court. Flack was ordered and did appear before all counsel on the morning of September 10th in Jury Room No. 2 and answered questions which were propounded by them. No Commonwealth representative was present. A court reporter took and transcribed the proceedings. All defendants' counsel who were

present have been furnished a copy. The original, by court order, is sealed and has not been read by this court or the district attorney. That day, all cases were continued with the consent of all defendants. The unit was required to furnish all of its records, both financial and investigatory. The Pennsylvania State Police were called to investigate the allegations of Flack by the district attorney and the court. The unit was directed to furnish all information concerning electronic surveillance and bugging and orders given to inspect all financial records, including safe deposit boxes of all past and present members of the unit. Flack was ordered to submit his diary and all personal records of his investigations. If any person of the unit desired not to comply, he was directed to make application to the court. No present or past member has exercised that right. Finally, Francis Flack, at the request of the district attorney and Frances Palmer, court order, was directed to undergo psychological and psychiatric testing. All of the information was to be submitted in camera. The material upon which this court has made its decision has been reproduced and sealed in the event of an appeal.

District Attorney Nelson, subsequent to the September 10th order, requested the Governor's Justice Commission to audit the unit's funds. Pursuant to that request a representative did examine the financial records of the unit limited to a determination of whether the Governor's Justice Commission funds were used as applied for. That examination is completed and an oral report is submitted and reduced by this court to a memo, which has been sealed for review on appeal, if required. This court is not at liberty to expose those findings nor are they material to a determination of this matter.

Reports have now been received from the mental

examinations and the Pennsylvania State Police. The equipment has been furnished for inspection by the unit. Three affidavits have been submitted by Captain Russell McFarland, the unit's commander, concerning the equipment. By court order, affidavits have also been supplied by the Mayor of Farrell and the Chief of Police concerning a particular item of equipment.

This court is convinced that although the proof of exceptional circumstances and compelling reasons for disclosure was not produced by defendants as required by Rule 310, such existed. Being known to the court, justice cried out for an investigation and an in-camera inspection. What portion of that revealed should be disclosed? The query turns, in part, to what use defendants can put the revelations. To permit a defendant to turn favorable information over to the news media would be unfair to the Commonwealth and supply an unwarranted advantage. Wherefore, as a part of the order, defendants will be directed to refrain from such disclosures.

The law of pretrial disclosure is not defined with absolute clarity in this most delicate area. The concept is relatively new in American jurisprudence.

The United States Supreme Court first spoke of this problem in Mooney v. Holohan, 294 U. S. 103, 55 S. Ct. 340, 79 L. Ed. 791 (1935). There, the court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with "rudimentary demands of justice."[5]

The same rule obtains when the State, although not soliciting false evidence, allows it to go uncorrected

---

[5] This same principle is reaffirmed in Pyle v. Kansas, 317 U. S. 213, 63 S. Ct. 177, 87 L. Ed. 214 (1942); White v. Ragen, 324 U. S. 760, 65 S. Ct. 978, 89 L. Ed. 1348 (1945); Miller v. Pate, 386 U. S. 1, 87 S. Ct. 785, 17 L. Ed. 2d 690 (1967).

when it appears:[6] Napue v. Illinois, 360 U. S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959).

Denial of evidence favorable to a defendant when requested prior to trial was held to be a denial of due process regardless of the good or bad faith of the prosecution in Brady v. Maryland, 373 U. S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

More recently in Giglio v. United States, 405 U. S. 150, 92 S. Ct. 76, 31 L. Ed. 2d 104 (1972), it was held that the failure of the government to disclose that a deal had been made by an assistant United States Attorney with the prime witness for the government was a denial of due process requiring a new trial.

For offenses arising in Federal court, Federal Rule of Criminal Procedure 16, 18 U. S. C. §16, which became effective July, 1966, is applicable. There it is provided, inter alia, "(b) Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, which are within the possession, custody or control of the government, upon a showing of materiality to the preparation of his defense and that the request is reasonable."[7]

---

[6] To the same effect in a slightly earlier case see Alcorta v. Texas, 355 U. S. 28, 78 S. Ct. 103, 2 L. Ed. 2d 9 (1957).

[7] Application of Federal Rule of Criminal Procedure 16 is dismissed in United States v. Fioravanta, 412 F. 2d 407 (3rd Cir., 1969). The principles there announced are: One, application for relief under the discovery rules is a matter within the sound discretion of the district court and its ruling will be disturbed only for an abuse of discretion. Two, a contention that the denial of all pretrial motions of a wide ranging nature demanding "anything which is or could be helpful to the defendant in the preparation of his defense" is not per se prejudicial. Three, that the prosecution is not required to disclose evidence which would reveal its trial strategy. Four, a lower court is not required to order wholesale disclosure of "all evidence favorable to the defendant."

There is no similar rule in Pennsylvania. However, Pennsylvania appellate courts have referred to the American Bar Association Standards on Discovery and Procedure Before Trial without specially accepting these standards.[8] By section 2.1, subsection "(i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses . . . together with their relevant written or recorded statements" are to be submitted.

This court has been unable to find a clear declaration in any Pennsylvania appellate case of what must be disclosed to a defendant under the constitutional due process requirement of favorable testimony.[9]

---

[8] Commonwealth v. Smith, 417 Pa. 321, 208 A. 2d 219 (1965).

[9] In Lewis v. Lebanon Court of Common Pleas, 436 Pa. 296, 260 A. 2d 184 (1969), it was held that a district attorney did not have the right to request that FBI agents not talk to defense counsel prior to trial. Rule 310 was held not to be applicable because the conversation with the FBI agent would not be evidence in the possession of the Commonwealth. In Commonwealth v. Smith, supra, defense counsel desired to inspect a statement given by a material witness through a subpoena duces tecum. It was appealed to the United States Supreme Court which, based on a statement by the solicitor general that no request had been made of the Federal Government to make the statement available, returned it to the State courts. The Supreme Court of Pennsylvania directed that the lower court should permit the issuance of the subpoena duces tecum for the two statements given to the FBI. It is not clear from the opinion as to whether the statements were to be given to the defendant prior to the testimony of the witnesses or simply at trial. In Commonwealth v. Stafford, 450 Pa. 252, 299 A. 2d 590 (1973), after conviction for murder the defendant desired a new trial on the grounds that he was denied access to laboratory reports prior to trial of appellant's clothing in the possession of the Commonwealth. Rule 310 was held not to be applicable. The court concluded that the laboratory tests should be made available at trial once the Commonwealth initiates a general inquiry concerning the accused's clothing. However, it was held not to be prejudicial error within the teachings of Brady v. Maryland, supra. In Commonwealth v. Campbell, 445 Pa. 488, 284 A. 2d 798 (1971),

There are certain principles, however, that our Supreme Court requires to be considered. One, the interest of the Commonwealth did not require that the district attorney should win every case, but rather that justice should be done. Two, the State has an interest in seeing that the innocent not be wrongly punished, as well as in convicting the guilty. Three, society wins not only when the guilty are convicted but when criminal trials are fair. Our system of administration

---

a pretrial inspection of a pair of slacks was denied by the lower court. On appeal, this was held not to be within the purview of Rule 310. Commonwealth v. Turra, 442 Pa. 192, 275 A. 2d 96 (1971), held that a defendant must be given an opportunity to establish the existence of exceptional circumstances and compelling reasons for application of Rule 310. In Commonwealth v. Doberstein, 223 Pa. Superior Ct. 554, 302 A. 2d 513 (1973), the defendant, a policeman, was convicted of forcible rape. He contended that it was error by the lower court not to require the Commonwealth to supply to him the background of the prosecuting witness established through investigation by the police that that witness had a reputation for not liking policemen. The lower court had informed defendant prior to trial the communities in New Jersey where the investigation was conducted but refused the details of the investigation. The court held that questions involving pretrial discovery in criminal cases are generally within the discretion of the lower court. Citing Commonwealth v. Gockley, 411 Pa. 437, 192 A. 2d 693 (1963), at page 557: "Absent a constitutional requirement that the evidence be made available to the appellant we hold that the matter was one for the exercise of judicial discretion." However, the court did cite the holding of Lewis v. Lebanon Court of Common Pleas, supra, that, page 556: " ' [T] he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' "

Finally, in Commonwealth v. Foster, 219 Pa. Superior Ct. 127, 280 A. 2d 602 (1971), it was held not to be error for the lower court to refuse a request that the Commonwealth produce jury investigation reports which the district attorney's office had in its possession.

of justice suffers when the accused is treated unfairly. Four, a district attorney may not suppress evidence or secrete witnesses, for this is a denial of due process under the United States Constitution. Five, under proper circumstances a trial court may, in its discretion, and upon stated grounds for such drastic action, make such orders as it should deem necessary in an individual case: Lewis v. Lebanon Court of Common Pleas, supra.

Wherefore, possible areas of discovery are discussed.

## WIRETAPPING .

By affidavit and production of equipment the unit alleges it never wiretapped or had the equipment to do so. The Pennsylvania State Police have thoroughly investigated this subject and will, subsequently, reveal their findings in appropriate occasion and form.

The issue to be decided now, however, is not whether wiretapping occurred but whether any of the information resulting in these cases was "come by" through such device. A reading of all the unit's files, Flack's "diary" and the State Police investigation reveals no case where Francis Flack is the principal witness[10] in which wiretapping was involved. By Flack's own statement, he knew of no wiretapping until after the raid and after his "cover was blown." There is no evidence that leads were given him from the unit in any way connected with wiretapping. It appears he operated on his own initiative, buying from his peer group and those he was introduced to through his own efforts. Wherefore, wiretapping is not presently of concern.

---

[10] This includes all of the 67 cases Flack is responsible for filing.

## MENTAL EXAMINATIONS

Flack was examined on September 15, 1973, by Robert Devine, the same clinical psychologist who does this court's juvenile testing on a weekly basis.

On September 21, 1973, Dr. John Thomas, an eminent psychiatrist from Pittsburgh, conducted psychiatric testing. Neither report concludes the subject to be psychotic or unable to testify. At the writing of this opinion, only an oral report of his findings has been submitted. As in most all such examinations there are certain matters, however, which fall within "evidence favorable to a defendant."

There is no Pennsylvania appellate case ruling that mental tests of the principal witness of the Commonwealth must be disclosed prior to trial. However, there is respectable authority that such matters should be disclosed to defendants where the case turns upon the testimony of one witness and there is some question as to his capacity or desire to recall truthfully the events relied upon by the Commonwealth.

Standards Relating to Discovery and Procedure Before Trial, of the American Bar Association's Project for Criminal Justice, section 2.1, subsection (a)(iv), requires disclosure of "any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons."

In Hamilton v. United States, 433 F. 2d 526 (Court of Appeals of D. of C., 1970), a previous psychiatric evaluation of a principal witness had been supplied to defendants. A request was made for a psychiatric examination of the government's principal witness before trial. This was denied on the grounds that there had been provided no substantial factual basis for the request and that the previous psychiatric evaluation of the principal witness concluded that there was no

psychosis which had been furnished to defendant. However, in State v. Butler, 27 N. J. 560, 143 A. 2d 530 (1958), defendants were convicted of murder. The testimony rested entirely upon one witness. Both the State and the defense learned prior to trial that the witness had been a patient in a mental hospital four years previous. The State had an examination of the witness prior to trial. Defendant desired a similar examination. Upon objection by the district attorney, the lower court refused the request. Further, the court denied defendant's request to receive a copy of such portions of the State's report as would show the opinion of the examining psychiatrist. The court examined the report ex parte and concluded that the witness was competent to testify. In granting a new trial, the court referred to Commonwealth v. Kosh, 305 Pa. 146, 157 Atl. 479 (1931), where, after conviction and on appeal, the Pennsylvania Supreme Court ordered a psychiatric examination of an important witness for the Commonwealth whose mental capacity had been challenged at trial. The court noted that at any stage of the proceedings the lower court can order medical examinations. However, the Supreme Court of New Jersey cautioned, page 605:

"Manifestly, a practice of granting psychiatric examination of witnesses must be engaged in with great care. Orders to permit it to be done should be executed only upon a substantial showing of need and justification. Otherwise the course of trials would be unduly disrupted and their efficacy diminished. However, the boundaries of the court's discretion cannot be outlined with precision. Much reliance must be placed upon the judgment of the trial court in the individual case."

Finally, in Giles v. Maryland, 386 U. S. 66, 87 S. Ct. 793, 17 L. Ed. 737 (1967), the case was remanded to the lower court with instructions to conduct hearings

to determine whether evidence favorable to defendant was withheld by the State. Among the issues to be looked into was that the victim of an alleged multiple rape had attempted to commit suicide and was subsequently hospitalized for psychiatric examination approximately one month after the rape resulting in the conviction in the principal case.

In the case at bar, psychiatric and psychological examinations might not have been furnished to defense counsel had not the Commonwealth specifically requested that such an examination occur. In view of this action, it was felt that, in fairness to defendant, reports should be supplied with the same information as available to the district attorney and the court.

Wherefore, it is concluded that the psychiatric and psychological reports in the interest of justice will be made available to all requesting parties.

## FLACK'S DIARY

That referred to as a "diary" is actually loose pages of impressions of a young man after experiencing involvement in life. Some sections are extremely personal and other strictly factual.

A review of the "diary" and all other evidence submitted to this court fails to disclose that any of the cases are tainted by payoff by the unit or its representatives.

The personal notes were compared with every report submitted by Flack to the unit. Any discrepancy found resulted in a reproduction of the portion of the diary and the report to the unit, which will be furnished to that defendant and the district attorney only. In addition, particular items such as the affidavit for confinement of Flack as a material witness, testimony taken at the bond reduction hearing, Flack's commitment to jail as a material witness, copy of interview of Flack

at Sharpsville Police Station and his letters of resignation are being furnished to all defendants who have made application and will be furnished to all others upon application.[11]

All previously continued cases will be listed for trial. An appropriate order is entered.

## ORDER

And now, September 27, 1973, it is hereby ordered and decreed that the clerk of this court shall send a copy of this order by regular mail to each of the named defendants above or their counsel, if represented.

That, as to the following cases in addition thereto, the clerk shall send by regular mail to defendants, or, if represented, to their counsel, the envelope prepared by this court with the name of defendant thereon. Those named defendants, who have orally moved this court as of September 10, 1973, for such evidence as may be favorable to defendants, are as follows: Timothy Holler, Dave Voytik, David Hinkson, David McNamara, Richard Carlo, William Clarke, Michael Kempa, Howard Paul Uber, Gary Nelitz, Joseph Vance, Frank Herrmann, Betsy Zolnier, Thomas Fagan, John Fuchs, Ben Bakunas, Salvatore Arena, Terry Ringer, Frank Bartolomucci, Randy Wolanin, James Stefanick and Vivian Lukacs.

Enclosed in each of the above-mentioned envelopes is:

1. Transcript of hearing before this court on September 5, 1973, concerning request for reduction of bond by Francis Flack pursuant to Pa. R. Crim. P. 4014.

---

[11] By previous order, the district magistrate was directed to make available the application for search warrant for Flack's safe deposit box.

2. Transcript of interview with Francis Flack at Sharpsville Police Station on or about September 4, 1973.

3. Search warrant and supporting probable cause application along with letter of resignation of August 31, 1973, of Francis Flack to Mayor Francis Petrillo and letter of Francis Flack to the editors of August 31, 1973.

4. Commitment of Viola Lewis and Francis Flack to the Mercer County Jail and letter of Francis Flack of August 31, 1973, to Captain McFarland of resignation as stapled together.

5. Affidavit pursuant to Rule 4014 of Frances S. Palmer.

6. Copy of report of Robert Devine, Psychologist.

7. Report of Dr. John Thomas, Psychiatrist.

8. A copy of this opinion.

In Commonwealth v. Gary Nelitz, September term, 1973, no. 25; Dave Nasser, August term, 1973, no. 22; Randy Wolanin, August term, 1973, no. 45; Richard Carlo, August term, 1973, no. 6; August term, 1973, nos. 27, 28 and 29; and September term, 1973, no. 4; John Fuchs, August term, 1973, no. 15; William Clarke, July term, 1973, no. 18; Ben Bakunas, August term, 1973, no. 11; an additional order has been entered in each case supplying additional material in the nature of a copy of the reports submitted by Francis Flack, a portion of personal notes of Francis Flack, copy of laboratory report or other material from the file of the Shenango Valley Narcotics Unit. The same information is not contained in each case and a separate order is entered herewith, a copy of which is contained in each envelope listing the items in detail furnished therein.

Any other defendant than those named above must move this court in writing to receive a copy of the

above-mentioned material with the exception of Dave Nasser at August term, 1973, no. 22, who is supplied with a copy of the material furnished to all defendants plus additional material which may be favorable as indicated above.

All cases which were scheduled for the September Trial Term shall be listed for trial at the October trial term. All cases listed for the October trial term shall be tried as scheduled unless there is further order of this court continuing any one or more of the above cases for cause shown.

Any of the above-captioned defendants who has pleaded guilty and is awaiting sentence shall be listed for sentence by the court administrator at a time and date convenient to the court.

Defendants, their attorneys or representatives shall not disclose at any time, subject to possible contempt of court for violation thereof, any of the contents of the within envelopes to any representative of the news media, of which this court has determined may be favorable to defendant.