PEOPLE v HARBIN

Docket No. 113343. Submitted July 13, 1989, at Grand Rapids. Decided August 23, 1989. Leave to appeal applied for.

William R. Harbin, Jr., was charged with escaping from the Michigan Training Unit, a prison facility run by the Michigan Department of Corrections. Following defendant's arraignment, defense counsel requested of the prosecution the names of all res gestae witnesses and requested of the Department of Corrections all documents relating to the escape, a list of the names of all corrections officers working in the designated unit of the facility for a ten-day period preceding the escape, and a list of the names and prison numbers and the photographs of all prisoners residing in designated units of the facility on the date of the escape. A similar request was made by letter to the warden. The request to the prosecution was based on the statute which requires the prosecution to supply a list of trial witnesses, while the request on the Department of Corrections was based on the Freedom of Information Act. The prosecution supplied a five-page investigation report it had in its possession and promised to supply any additional information it obtained. Defense counsel received no reply to the request made on the Department of Corrections and received permission from the warden to interview certain persons but received no information as to the identity of the prisoners residing in the designated units. Defense counsel moved in Ionia Circuit Court to dismiss the charge on the basis that the failure of the prosecution and Department of Corrections to provide all the requested information precluded defendant from presenting his defense of duress. The trial court, James L. Banks, J., granted the motion and dismissed the charge. The prosecution appealed.

The Court of Appeals *held:*

It was error for the trial court to dismiss the criminal charge under these circumstances. Defense counsel made no effort to seek judicial enforcement of any right to compel disclosure

REFERENCES

Am Jur 2d, Depositions and Discovery §§ 400, 420, 426, 427.

See the Index to Annotations under Discovery; Escape or Flight; Freedom of Information Acts.

under the Freedom of Information Act, to seek the aid of the prosecution in locating and serving witnesses or to seek a discovery order from the trial court relative to the desired documents and photographs. The record does not establish that the prosecution intentionally and persistently sought to obstruct or interfere with defendant's defense. At best the defense motion to dismiss the charge was premature.

Reversed and remanded.

ESCAPE — DISCOVERY — REMEDIES.

It is error for a trial court to dismiss a prison escape charge on the basis that the failure of the Department of Corrections to provide information relative to the identity of staff and prisoners who were in a particular area of the prison on a particular date pursuant to a defense request for such information made pursuant to the Freedom of Information Act denied defendant the opportunity to present the defense of duress where the defense failed to first either pursue the remedies under the Freedom of Information Act or seek a discovery order for that information from the trial court.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Gary M. Gabry,* Prosecuting Attorney, and *Raymond P. Voet,* Assistant Prosecuting Attorney, for the people.

*David A. Hoort,* for defendant.

Before: MICHAEL J. KELLY, P.J., and WAHLS and HOLBROOK, JR., JJ.

PER CURIAM. The prosecution appeals from a December 5, 1988, order of the Ionia Circuit Court dismissing the charge of prison escape, MCL 750.193; MSA 28.390, against defendant, William R. Harbin, Jr., on the basis of defendant's having been "denied an opportunity to present a defense." We reverse and remand for proceedings consistent with this opinion.

On May 4, 1988, a warrant was authorized for the arrest of defendant for prison escape for an incident which occurred on April 10, 1988. An

arraignment was conducted on May 19, 1988, and a preliminary examination on May 31, 1988. On May 25, defense counsel, in a document entitled "Appearance and Demands," requested that the prosecution provide him with, among other things, a list of the "[n]ames and addresses of all witnesses required by law to testify against defendant and any other res gestae witnesses known to the prosecuting attorney or the investigating law enforcement agency." In support of this request, defense counsel cited MCL 767.40a(3); MSA 28.980(1)(3). That statute provides:

> Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial.

Also on May 25, 1988, defense counsel requested that the Michigan Department of Corrections provide him with, among other things, all documents pertaining to the charge against defendant, any documents prepared by "Counselor Brown" and "Counselor Goodman," the names of all corrections officers "working in c-unit Michigan Training Unit, on or between April 1, 1988 and April 10, 1988," the "names and prison numbers of all inmates residing in E-unit, Michigan Training Unit, on April 10, 1988," and the "names and prison numbers of all inmates residing in c-unit, Michigan Training Unit, on April 10, 1988." In support of this request, defense counsel cited the Freedom of Information Act, MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.* In addition, in a letter dated June 2, 1988, defense counsel requested permission from the warden of the Michigan Training Unit, James Yarborough, to interview Counselors Brown and Goodman, to be given "the names and prison

numbers of the inmates residing in E unit on April 10, 1988," and to review, with defendant, any photographs in the custody of the penal institution of the inmates residing in E unit on April 10, 1988.

In response to defense counsel's "Appearance and Demands," the prosecution, on May 25, 1988, furnished counsel with a copy of the police report regarding the incident—a detailed report which is five pages long and includes summaries of interviews with several inmates, officers and staff personnel—and advised counsel that "we will furnish you with any evidence or information which comes into the prosecution's possession which is both favorable to the accused and is material to either guilt, or innocence or punishment." However, it was specifically stated that the remaining "demands" for information were viewed "as a nullity as no statute, case law or other binding authority requires the prosecution to answer or comply with same." Apparently, defense counsel never received a response to his May 25, 1988, Freedom of Information Act request to the Department of Corrections. In response to the June 2, 1988, letter to Warden Yarborough, defense counsel was informed that he was free to contact Counselors Brown and Goodman and to interview them "on their own time," and that no document existed listing the names and numbers of inmates living in E unit on April 10, 1988. Defense counsel subsequently sent letters to Counselors Brown and Goodman, but received no responses. Moreover, in his appellate brief, defendant acknowledges that on July 6, 1988, defense counsel was informed by the prosecuting attorney that Warden Yarborough had located an index of the names of prisoners in the relevant portion of the correctional center in which defendant was detained and that a copy of the index was received on August 4, 1988.

On June 24, 1988, defense counsel filed a motion to dismiss the charge of prison escape, arguing that the failure of the prosecution and the Department of Corrections to provide him with all of the information requested "precludes [defendant's] compliance with MCLA 768.21b; MSA 28.1044(2), prejudices his defense and violates his right to due process." MCL 768.21b; MSA 28.1044(2) provides, in pertinent part, that a defendant charged with prison escape who proposes to offer testimony to establish a defense of duress must file, at the time of arraignment, within fifteen days thereafter, or at such other time as the court directs, a written notice containing, as particularly as is known to the defendant or the defense attorney, the names of witnesses to be called in behalf of the defendant to establish the defense of duress, as well as specific information relative to that defense. The trial court, at a hearing conducted on September 30, 1988, emphasizing that "[w]hat I see here is a direct attempt to try to thwart the defendant's attorney's ability to go in and investigate his case," granted defendant's motion to dismiss the charge against him on the basis that defendant had been "denied an opportunity to present a defense in this case."

We find the trial court's action in this case as extreme as it is extraordinary. Without citing one case, statute, or any other authority, either from the bench or in its written order, the court dismissed the serious criminal charge filed against defendant. It is clear that defense counsel was getting little cooperation from the Department of Corrections regarding his requests for information. All of those requests, however, were made without the involvement of the trial court. Instead of filing the proper motions to compel the production of the information he sought, counsel instead apparently attempted to circumvent the proper procedure by

making requests under the Freedom of Information Act and by filing a motion to dismiss based on the department's noncompliance with such requests. At no time did defense counsel file an action under the Freedom of Information Act to compel disclosure of the information sought, see MCL 15.235, 15.240; MSA 4.1801(5), 4.1801(10), request the prosecuting attorney to provide assistance in locating and serving process upon witnesses, see MCL 767.40a(5); MSA 28.980(1)(5), file a motion requesting the trial court to permit the delayed filing of defendant's notice of intention to claim the defense of duress, see MCL 768.21b(1); MSA 28.1044(2)(1), or file a motion for a discovery order regarding the desired documentation and photographs, see *People v Freeman (After Remand),* 406 Mich 514, 516; 280 NW2d 446 (1979); *People v Johnson,* 168 Mich 581, 584; 425 NW2d 187 (1988). See also 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 554.1, p 30, 1989 Cum Supp, pp 9-13.

Our review of the record convinces us that the prosecution in this case did not intentionally and persistently obstruct or deliberately interfere with the defense attorney's attempts to glean information substantiating defendant's duress defense. See *In re Bay Prosecutor,* 109 Mich App 476; 311 NW2d 399 (1981), lv den 413 Mich 852 (1982). Instead, it reveals to us that defense counsel tried to avoid bringing a proper motion for an order of discovery regarding the information he sought from the prosecutor and the Department of Corrections, opting instead to pursue novel and extrajudicial methods. In this regard, we quote the assistant prosecuting attorney in this case, who stated at the September 30, 1988, hearing in the circuit court:

So since the beginning, he [defense counsel] has

yet to comply with the Michigan Court Rules[1] which means he's got to make a request from the party, which he did in this particular case, but then the next step under the Michigan Court Rules is to come into court and then compel discovery. . . .

The Defendant hasn't done that yet. He's tried to seek information through the Freedom of Information Act. When he didn't receive that information, he came in immediately with a motion to dismiss, which obviously has brought this case out another 80 days or so, and it's—by taking his own legal shortcut—by not following the procedure of the Michigan Court Rules—he's trying to use this delay in the case used to his own benefit, when really actually, he's the one who has caused the delay.

We are in a tough position in the Prosecutor's Office. We're caught between Defendant's rights and the Department of Corrections. We are not a part of the Department of Corrections. We can't tell the Department of Corrections what to do or we can't control the Department of Corrections. So the only way we can ask the Department of Corrections be controlled is through the Michigan Court Rules; that the Defendant come in and follow the proper avenues and make—and that this Court can order the Department of Corrections to do these things.

We find that the trial court's dismissal of the charge against defendant on the basis of defendant's having been "denied an opportunity to present a defense" was premature at best and an abuse of discretion at worst. Accordingly, we set aside the trial court's December 5, 1988, order,

---

[1] We note that MCR 6.001(B) provided at that time that the "discovery proceedings under subchapter 2.300 may not be taken for the purposes of discovery in criminal matters," but that this Court has stated: "Even where discovery is not authorized by statute or rule, it has long since been recognized that discovery in criminal cases is a matter within the trial court's discretion." *Johnson, supra,* p 584.

reinstate the charge of prison escape against defendant, and remand the case for further proceedings, including, if defendant so chooses, the filing of proper motions for the issuance of discovery orders regarding the documents and photographs in the custody of the prosecution and the Department of Corrections which defendant wishes to inspect.

Reversed and remanded. We do not retain jurisdiction.